## SERVICING TRANSFER AGREEMENT

This Servicing Transfer Agreement (the "Agreement") is dated as of January 6, 2013 (the "Effective Date"), by and between the Federal Home Loan Mortgage Corporation ("Freddie Mac"), Bank of America, N.A. ("Transferor"), and Nationstar Mortgage LLC, a limited liability company organized and existing under the laws of Delaware ("Transferee"); the foregoing are hereinafter referred to individually as a "Party," and collectively as the "Parties".

WHEREAS, Transferor is the Servicer of the Transferred Mortgages (as defined below) pursuant to the master servicing contract set forth in the *Freddie Mac Single-Family Seller/Servicer Guide* (as amended from time to time, the "Guide") and in the other "Purchase Documents," as defined in the Guide; and

WHEREAS, Transferor and Transferee entered into that certain Mortgage Servicing Rights Purchase and Sale Agreement (the "Servicing Sale Agreement"), dated as of the Effective Date (a substantially final draft of which was provided to Freddie Mac not less than two Business Days prior to the Effective Date, and a true and correct, fully executed copy of which has been provided to Freddie Mac on or before the Effective Date, each of which may be redacted to remove pricing information, confidential information, and other information not related to the Transfer of Servicing), pursuant to which Transferor has agreed to assign, convey, sell and transfer the legal and beneficial ownership of the right and obligation to service the Transferred Mortgages (the "Servicing Sale") as of January 31, 2013 (the "Servicing Sale Date"), and the transfer of the physical servicing of the Transferred Mortgages on or about February 18, 2013, or such other date mutually agreed upon by the Parties (the date of such transfer, the "Servicing Transfer Date"); the transfer of the physical servicing of the Transferred Mortgages and the Servicing Sale are hereinafter referred to together as the "Transfer of Servicing"; and

WHEREAS, Transferor will remain the servicer of the Transferred Mortgages until the Servicing Transfer Date; and

WHEREAS, Section 51.24 of the Guide provides that Transferor may not transfer its Servicing portfolio (in whole or in part) without Freddie Mac's prior written approval, and Freddie Mac has not yet granted such consent; and

WHEREAS, the Parties have now agreed to the terms and conditions pursuant to which Freddie Mac will grant its consent to the Transfer of Servicing from Transferor to Transferee.

NOW, THEREFORE, in consideration of the agreements and undertakings set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and subject to the conditions set forth herein, the Parties hereto agree as follows:

1.  **Incorporation of Recitals; Capitalized Terms.**

    (a)  All of the foregoing Recitals, together with the Exhibits attached hereto, are hereby incorporated herein by reference.

(b)     As used herein, the "Transferred Mortgages" are the residential mortgage loans identified in the electronic file (the "Electronic File") that was e-mailed by Lee Wardlow of Transferor to Sally Baker and Tricia McKitty of Freddie Mac, on January 3, 2013 (a copy of that e-mail is attached hereto as Exhibit A-1); a copy of the responding e-mail from Tricia McKitty at Freddie Mac to Lee Wardlow of Transferor on January 4, 2013, confirming the Mortgages listed in the Electronic File represent the entire preliminary population of Mortgages, is attached hereto as Exhibit A-2; such Electronic File is subject to subsequent adjustment as provided below. The Electronic File contains two (2) columns, which are (i) the Freddie Mac loan number, and (ii) the applicable Transferor Seller/Servicer loan number. The Freddie Mac loan number listed in the Electronic File will be the determinative identifier in the event there is any conflict between the two (2) columns for a particular Mortgage. The Parties agree that, not later than ten (10) Business Days (as defined in the Guide) after the Effective Date, Transferor will send an email providing an additional electronic file (the "Subsequent Electronic File"), which shall be in the same format as the Electronic File, and shall identify any changes required to be made to the Electronic File, which changes Transferor and Transferee agree will only be made to the extent required pursuant to the terms of the Servicing Sale Agreement. The list of Mortgages identified in the Electronic File will serve as the initial basis for the completion of Form 981G, in the form attached as Exhibit E hereto ("Agreement for Subsequent Transfer of Servicing of Single-Family Mortgages"), required by Freddie Mac in connection with the Mortgages subject to the Servicing Transfer Date, subject to any modification required pursuant to (x) the Subsequent Electronic File, and (y) the final reconciliation process described in Section 2(d) below.

(c)     All other capitalized terms used in this Agreement and not otherwise defined herein shall have the respective meanings set forth in the Guide, or if not defined in the Guide, in the other Purchase Documents.

(d)     In the event of a conflict between the Guide and this Agreement, the terms of this Agreement shall prevail.

2.     **Consent to Servicing Transfer.**

(a)     Freddie Mac hereby grants its consent to the Transfer of Servicing, subject to (x) the execution of the Servicing Sale Agreement by Transferor and Transferee (y) the execution of the Excess Yield Conveyance Agreement by Transferor and Freddie Mac, in the form attached as Exhibit B hereto, as of the Servicing Sale Date, and (z) the receipt and acceptance by Freddie Mac of the documentation and information required by Freddie Mac for this transaction in accordance with Guide Section 56.3(b) (the "Transfer Documentation") no less than forty-eight (48) hours prior to the close of business on the Servicing Transfer Date, and in accordance with any other procedures mutually agreed to by Transferor, Transferee and Freddie Mac. The Transfer Documentation shall include a fully executed Form 981G, in the form attached as Exhibit E hereto ("Agreement for Subsequent Transfer of Servicing of Single-Family Mortgages"), for each applicable transferor

2

Seller/Servicer number, appropriately modified to accurately reflect the terms and conditions of this Agreement. As noted above, each such Form 981G will be subject to further modification pursuant to the Subsequent Electronic File, and pursuant to the reconciliation process described in Section 2(d) below.

(b) Freddie Mac's consent specifically recognizes that:

(i) the transfer of legal and beneficial ownership of the right (under the Guide and the other Purchase Documents) to service the Transferred Mortgages to Transferee shall occur on the Servicing Sale Date;

(ii) the transfer of the physical servicing of the Transferred Mortgages shall occur on the Servicing Transfer Date;

(iii) Transferor will remain the servicer of the Transferred Mortgages during the period between the Servicing Sale Date and the Servicing Transfer Date, which will enable Transferor, among other things, to service the Transferred Mortgages in Transferor's own name without re-titling the accounts, and will permit reports to be provided to Freddie Mac in the name of Transferor (but on behalf of Transferee), notwithstanding any Freddie Mac requirements expressly to the contrary on subservicing;

(iv) any waiver, special underwriting provision, or other amendment included in the Purchase Documents (each a "Term of Business" and collectively, the "Terms of Business") , which, by its express terms, apply to one or more Transferred Mortgages, will continue to apply to such Transferred Mortgages on and after the Servicing Sale Date; and

(v) in the event that Transferor is required (pursuant to the terms of the Servicing Sale Agreement) to repurchase the right and obligation to service any of the Transferred Mortgages from Transferee, Transferor and Transferee shall give prior written notice to Freddie Mac at least thirty (30) calendar days prior to the effective date of transfer in connection with such repurchase; no additional consent from Freddie Mac will be required for the transfer of such Servicing from Transferee to Transferor provided that (i) Freddie Mac receives an appropriately completed Form 981G, in the form attached as Exhibit E hereto, together with any and all other documentation required under the Guide in connection with such transfer; and (ii) with respect to the repurchase of the right and obligation to service the Transferred Mortgages not relating to the repurchase of the corresponding Transferred Mortgage by Transferor from Freddie Mac, all Transferred Mortgages for which such repurchase is required do not have an aggregate unpaid principal balance in excess of One Billion U.S. Dollars ($1,000,000,000), taking into account any and all prior transfers subject to the terms of this subsection (v). If, however, the required repurchases (not relating to the repurchase of the corresponding Transferred Mortgage by Transferor from Freddie Mac) have an aggregate

3

unpaid principal balance in excess of One Billion U.S. Dollars ($1,000,000,000), taking into account any and all prior transfers subject to the terms of this subsection (v), then Freddie Mac's consent shall be required in connection with any such Transferred Mortgage servicing repurchase in excess of such amount, which consent, however, shall not be unreasonably withheld or delayed.

(c)    Freddie Mac shall be deemed to have found the submission under Section 2(a) above to be acceptable unless Freddie Mac objects in writing within forty-eight (48) hours after Freddie Mac's receipt of such submission.

(d)    The Parties agree if the Servicing of any Transferred Mortgages, pursuant to the terms of the Servicing Sale Agreement, is not ultimately transferred to Transferee (such Mortgages are herein called the "Excluded Mortgages"), then the Parties shall cooperate in revising the list of Transferred Mortgages to which a Form 981G, in the form attached as Exhibit E hereto ("Agreement for Subsequent Transfer of Servicing of Single-Family Mortgages"), applies to reflect that the servicing of the Excluded Mortgages was not transferred to Transferee.

## 3.    Representations, Warranties, Other Obligations.

(a)    Notwithstanding the Transfer of Servicing (or any other provision to the contrary in the Purchase Documents) or any subsequent transfers of Servicing with respect to the Transferred Mortgages, Transferor and the other Transferor Parties (as defined below), to the extent applicable, each retains all of its respective liabilities and obligations with respect to any and all surviving representations, warranties, covenants and agreements:

(i)    of the Transferor Parties, or any of them, under the Settlement Agreement (the "Settlement Agreement") dated as of December 31, 2010, entered into between Transferor, BAC Home Loans Servicing, L.P., and Countrywide Home Loans, Inc. (the "Transferor Parties") and Freddie Mac (the Transferor Parties' respective obligations under such Settlement Agreement are collectively herein called the "Settlement Obligations"); the Transferor Parties other than Transferor (and BAC Home Loans Servicing, L.P., which was subsequently merged into BofA ) are executing this Agreement to evidence each of such parties' respective consent and agreement to the terms of this Section 3; and

(ii)    of Transferor under the Purchase Documents with respect to the origination of the Transferred Mortgages, and with respect to the servicing before the Servicing Sale Date of the Transferred Mortgages, including, but not limited to:

(A)    representations, warranties, covenants and agreements regarding loan instruments and documentation, legal enforceability, first lien priority status, the Borrower's income and credit qualifications, the

4

Borrower's source and amount of down payment, the value and acceptability of collateral, the verification and documentation of the Transferred Mortgages, the contents of the Transferred Mortgage file, the investment quality and overall eligibility of each Transferred Mortgage for sale to Freddie Mac, and

(B) repurchase, indemnification and any other remedies available to Freddie Mac under the Purchase Documents with respect to a breach of any representations, warranties, covenants or agreements (described in Section 3(a)(ii)(A) above),

(the representations, warranties, covenants and agreements described in subsections (A) and (B) immediately above are collectively herein referred to as the "Origination and Sale Obligations"; and

(C) except as set forth in Section 4(e) below, the representations, warranties, covenants and agreements relating to Transferor's or any other prior servicer's servicing obligations and duties that arose or existed (under Volume 2 of the Guide and related provisions of the Purchase Documents) prior to the Servicing Sale Date, including, but not limited to, requirements relating to day-to-day loan administration activities, reporting and remitting, and foreclosure and loss mitigation activities with respect to the Transferred Mortgages prior to the Servicing Sale Date (the "Prior Servicing Obligations") (the Settlement Obligations, the Origination and Sale Obligations, and the Prior Servicing Obligations are collectively herein referred to as the "Transferor Obligations").

(b) The Transferor Obligations shall be retained by Transferor, and/or any other of the applicable Transferor Parties, with respect to all of the Transferred Mortgages. The Transferor Obligations shall not become the obligation or liability of Transferee, irrespective of whether the Transferor Parties fail to meet the Transferor Obligations, subject, however, to the terms of Sections 4(d)(iv) and 6(c) below.

(c) Except as may be explicitly set forth in this Agreement, nothing herein is intended to add to, subtract from, or otherwise amend the (i) the Transferor Obligations or (ii) the Purchase Documents applicable to any particular Party. Nothing contained herein is intended by Transferor to serve and shall not serve (except as may be otherwise expressly set forth herein) as a waiver of any right or remedy that Transferor may have under Transferor's Purchase Documents, the Settlement Agreement, at law, or in equity.

(d) After the Effective Date, the Parties agree to negotiate in good faith regarding the terms upon which Transferee might be able (subject to Transferee's satisfaction, as

5

determined by Freddie Mac in its sole discretion, of any applicable eligibility, credit and other requirements of Freddie Mac) to originate mortgage loans under the Freddie Mac Relief Refinance Same Servicer offering, or an equivalent or successor program offered by Freddie Mac (collectively, the "Same Servicer Offering"). Transferor and Transferee acknowledge that (i) Freddie Mac has not yet agreed (and may not ultimately agree) to any such terms (and is expressly not agreeing to any such terms in this Agreement), and (ii) certain existing Freddie Mac policies and procedures would need to be waived or amended before Freddie Mac would be able to grant Transferee the ability to take advantage of the Same Servicer Offering.

If and when the Same Servicer Program becomes available for use by Transferee, Transferor shall retain the Origination and Sale Obligations (with respect to the Original Mortgage, as defined below) only to the extent that Transferee is required to do so under the express terms of the Same Servicer Offering then in effect (as used herein, an "Original Mortgage" is a Mortgage being refinanced, and the new refinance mortgage loans are herein called the "Same Servicer Mortgages"); Transferee shall be liable as of the Origination Date of a Same Servicer Mortgage for the origination and sale obligations of the same types described in Sections 3(a)(ii)(A) and (B) with respect to the Same Servicer Mortgages (such obligations, the "Same Servicer Origination and Sale Obligations").

The refinance of an Original Mortgage under the Same Servicer Offering will not amend or modify Transferor's Origination and Sale Obligation with respect to the Original Mortgage, except (x) if Transferor's Origination and Sale Obligation would be reduced under the Same Servicer Offering and/or (y) if Transferor otherwise agrees under the applicable Transferor Purchase Documents, in each case as in effect at the time of such refinance.

If Freddie Mac determines that any Same Servicer Mortgage must be repurchased, and:

(i)      such repurchase is determined by Freddie Mac to be an Origination and Sale Obligation with respect to an Original Mortgage, based on the terms of this Agreement, Freddie Mac will notify both Transferor and Transferee, but will only proceed against Transferor, in accordance with Section 5 hereof;

(ii)      such repurchase is determined by Freddie Mac to be a Transferee Obligation (whether due to a breach of a Same Servicer Origination and Sale Obligations or otherwise as a part of Transferee Obligations) based on the terms of this Agreement, Freddie Mac will notify both Transferor and Transferee but will only proceed against Transferee; and

(iii)      Freddie Mac cannot determine whether such repurchase is an Origination and Sale Obligation related to the Original Mortgage or a Transferee

6

Obligation, Freddie Mac will notify both Transferor and Transferee but will only proceed against Transferee; provided, however, that Transferor and Transferee shall cooperate between themselves to seek to determine whether the repurchase should be an Origination and Sale Obligation related to the Original Mortgage or a Transferee Obligation and Freddie Mac agrees to abide by a joint determination, as to such issue, by Transferor and Transferee. If Transferor and Transferee do not agree to a joint determination, Freddie Mac will proceed against Transferee.

Transferee agrees that, notwithstanding Freddie Mac's obligation to negotiate in good faith, nothing in this Section 3(d) obligates Freddie Mac to make the Same Servicer Offering available for use by Transferee.

(e) Upon receipt of Freddie Mac's written request, the other Parties hereto agree to negotiate in good faith with Freddie Mac and each other, and to exercise commercially reasonable efforts, to document a procedure to facilitate Freddie Mac's communication with Transferor regarding (i) the exercise by Freddie Mac of its remedies (including, without limitation, repurchases), and (ii) payment by Transferor to Freddie Mac (directly or indirectly) of repurchase proceeds and other sums pursuant to this Agreement.

(f) Upon its execution by Transferor, this Agreement, as it pertains to Transferor, will be considered to be a Purchase Document.

4. **Transferee's and Transferor's Respective Obligations, Agreements, Representations, Warranties and Covenants.**

(a) With regard to all of the Transferred Mortgages, Transferee shall not be liable to Freddie Mac, and Freddie Mac shall not assert any losses, damages, deficiencies, claims, costs or expenses, nor shall it assert any right to indemnification, repurchase or any other remedy against Transferee or any of its direct and indirect affiliates, investors, officers, directors, employees, agents, with respect to the Transferor Obligations, regardless of whether any of the Transferor Parties continue to meet the Transferor Obligations, subject, however, to the terms of Sections 4(d)(iv) and 6(c) below.

(b) On and after the Servicing Sale Date, Transferee shall be responsible to Freddie Mac for the performance of all of Transferee's:

(i) Servicing representations, warranties, covenants and agreements contained in the Guide, the Purchase Documents, and/or any other applicable agreement between Transferee and Freddie Mac as to Servicing performed on or after the Servicing Sale Date by or on behalf of Transferee with respect to the Transferred Mortgages, including, but not limited to, any acts or failures to act by Transferor acting in the capacity as servicer for and on behalf of Transferee;

7

(ii)     as applicable, obligations (including both selling and Servicing obligations) under the Purchase Documents, if applicable, in existence prior to the date of this Agreement, between Transferee and Freddie Mac, as to mortgage loans not covered under this Agreement[1];

(iii)     obligations under the Amended and Restated Collateral Pledge Agreement dated as of May 31, 2012 (the "Pledge Agreement"), between Freddie Mac and Transferee;

(iv)     obligations under the Collateral Account Control Agreement dated as of September 30, 2012 by and between Transferee, Freddie Mac and Bank of New York Mellon (the "Control Agreement");

(v)     obligations under the Consent Agreement (the "Consent Agreement") dated on or about the Servicing Sale Date, entered into in connection with this Agreement, by and between Transferee, Freddie Mac, the "Depositor", the "Assignee", and the Administrative Agent, as those terms are defined in the Consent Agreement; and

(vi)     obligations under the Acknowledgment Agreement dated on or about January 3, 2013, entered into in connection with this Agreement, by and between Transferee, Freddie Mac and MSR X LLC.

(all of the obligations described in this Section 4(b), together with Transferee's obligations with respect to Same Servicer Mortgages as set forth in Section 3(d) above, are collectively referred to herein as the "Transferee Obligations". Upon its execution by Transferee, this Agreement, as it pertains to Transferee, will be considered to be a Purchase Document.

(c)     The Transferor Parties shall not be liable to Freddie Mac, and Freddie Mac shall not assert any losses, damages, deficiencies, claims, costs or expenses against any Transferor Party or any of their respective direct and indirect affiliates, investors, officers, directors, employees, agents, with respect to Transferee Obligations, regardless of whether Transferee continues to meet Transferee Obligations, subject, however, to the terms of Sections 4(d)(iv) and 6(c) immediately below.

(d)     Transferee represents, warrants and (as applicable) covenants that:

(i)     except for the express provisions of this Agreement, it is not relying on any information provided by Freddie Mac in entering into this transaction, nor is it relying on Freddie Mac to identify any deficiencies with respect to the Transferred Mortgages, or the prior servicing thereof;

---

[1] Nothing contained herein is intended by Transferee to serve (except as may be otherwise expressly set forth herein) as a waiver of any right or remedy that Transferee may have under its Purchase Documents, at law, or in equity.

8

(ii)   it has performed a due diligence review of a sampling of the Servicing rights to be transferred hereunder before entering into this Agreement, including without limitation, such review of the Mortgage files and the Custodial Accounts as Transferee deems appropriate; Transferee acknowledges that (A) it and its legal counsel have had a reasonable opportunity to perform the due diligence deemed by Transferee to be reasonable or customary in a transaction of a similar nature to that contemplated herein, and (B) Transferee has not given any notice to Freddie Mac of any negative findings resulting from any due diligence conducted by Transferee;

(iii)   it has performed whatever due diligence review of any outstanding or continuing Transferor Obligations that it deems appropriate to the extent that such Transferor Obligations are reasonably likely to affect Transferee's performance of its obligations under the Guide (and other Purchase Documents) and/or this Agreement. For example, but not in limitation of the immediately preceding sentence, in the event that Transferor (or any of the Transferor Parties) failed to obtain hazard insurance in connection with the origination of a particular Mortgage, such failure would constitute an Origination and Sale Obligation of Transferor, for which Transferee would not be liable. If, however, the property securing such Mortgage continues to lack hazard insurance more than a year following the Servicing Sale Date, this could be regarded by Freddie Mac as a breach of Transferee Obligations, and could result in an assertion of remedies by Freddie Mac; and

(iv)   in order to perform Transferee Obligations, Transferee may be required to address and remediate past acts, errors or omissions of prior servicers, including, without limitation, those of Transferor Parties, subject to whatever remedies Transferee may have under the Servicing Sale Agreement with Transferor, and Transferee agrees to do so. For example, but not in limitation of the immediately preceding sentence, in the event that Transferee conducts an annual escrow analysis of a Borrower's account and finds that Transferor (or any of the Transferor Parties) improperly administered the escrow account, such failure would constitute a Prior Servicing Obligation of Transferor for which Transferee would not be liable to Freddie Mac (and Transferor, or the applicable Transferor Party, may be liable to Freddie Mac for such Prior Servicing Obligation), but Transferee would be required to administer the escrow account, following the completion of such review, in accordance with the requirements of applicable law and the Guide.

(e)   Any compensatory fees assessed by Freddie Mac with respect to the Transferred Mortgages will be treated as a Transferor Obligation if Freddie Mac assessed such fees prior to the Servicing Transfer Date. Any compensatory fees assessed by Freddie Mac with respect to the Transferred Mortgages will be treated as a Transferee Obligation if Freddie Mac assessed such fees on or after the Servicing

9

Transfer Date. Without limiting the generality of the preceding sentences, the Parties acknowledge and agree that, for example, assuming a Servicing Transfer Date of February 18, 2013, Transferor shall be liable for any foreclosure timeline penalty fees assessed related to any foreclosure sales occurring as late as February 17, 2013, and Transferee shall be liable for any foreclosure timeline fees assessed for any foreclosure sales occurring on or after February 18, 2013.

(f)    Certain of the Transferred Mortgages are covered by negotiated credit enhancements, including, but not limited to, recourse and indemnification (collectively, the "Credit Enhancements").

   (i)    The Credit Enhancements relating to recourse and indemnification associated with the Transferred Mortgages are identified on Exhibit C and will be treated as a Transferor Obligation, and Freddie Mac will hold Transferor responsible for honoring such Credit Enhancements.

   (ii)    If Freddie Mac determines there are any additional Credit Enhancements associated with the Transferred Mortgages that (i) are not identified on Exhibit C, and (ii) were not added on or after the Servicing Sale Date, then such Credit Enhancements will be treated as a Transferor Obligation and Freddie Mac will hold Transferor responsible for honoring such Credit Enhancements, irrespective of whether Transferor knew of such Credit Enhancements prior to Transferor's execution of this Agreement.

## 5.    Mortgage Repurchases.

(a)    If Freddie Mac determines that one or more Transferred Mortgages must be repurchased due to a breach of the Transferor Obligations, Freddie Mac will notify both Transferor and Transferee in writing of this determination. Transferor shall have any and all appeal rights regarding such repurchase as set forth in the Guide and the other Purchase Documents between Transferor and Freddie Mac. Transferor will be responsible for remitting any and all repurchase funds directly to Freddie Mac (or, at Freddie Mac's written request, to Transferee as Transferor's conduit for submission to Freddie Mac) within the time frame and to the bank accounts specified by Freddie Mac. Transferee will be responsible for reporting the repurchase data to Freddie Mac in accordance with the Guide and the Purchase Documents. Transferee also covenants to exercise commercially reasonable efforts to cooperate with, and facilitate, any such repurchases by Transferor. Transferee acknowledges that it will not be entitled to any termination fee as servicer in connection with any Mortgage repurchase by Transferor.

(b)    If Freddie Mac determines that one or more Transferred Mortgages must be repurchased due to a breach of the Transferee Obligations, Freddie Mac will notify Transferee and Transferee will be responsible for remitting any and all repurchase funds directly to Freddie Mac. Transferee shall have any and all appeal rights regarding such repurchase as set forth in the Guide and the other Purchase Documents between Transferee and Freddie Mac.

10

6. **Additional Terms**.

(a)    In the event of any conflict between any applicable Form 981G, in the form attached as Exhibit E hereto, and this Agreement, this Agreement shall govern.

(b)    No future assignment of Servicing relating to the Mortgages or to any Same Servicer Transferred Mortgages shall operate to alter or extinguish a Party's Origination and Sale Obligations, as modified by this Agreement, or to alter or extinguish any Party's other obligations under this Agreement unless otherwise agreed in writing by Freddie Mac and any other affected Party or Parties.

(c)    In order to implement the provisions of this Agreement, the following procedure shall apply in the event that Freddie Mac has concluded that a Servicing breach with respect to a Mortgage has occurred (for example, but not by way of limitation, a document necessary for the Servicing of the Mortgage is lost or misplaced shortly before, during, or after the Transfer of Servicing, or errors occur in collection activities), notwithstanding anything to the contrary in the Guide and/or related Purchase Documents:

(i)    Freddie Mac shall determine, based on the information available to it, whether the initial acts, errors or omissions (collectively, the "Prior Acts") on which the declaration of a breach is based occurred (A) prior to the Servicing Sale Date or (B) on or after the Servicing Sale Date, and thereafter shall simultaneously notify Transferor and Transferee of such determination (along with Freddie Mac's determination, pursuant to the Guide, of how such breach should be remedied or cured); Freddie Mac reserves the right, based on information that subsequently becomes available to it, to change such initial determination. If Freddie Mac determines that the Prior Acts occurred prior to the Servicing Sale Date, the obligation and liability to cure or remedy the breach shall be part of Transferor's Prior Servicing Obligations. If Freddie Mac determines that the Prior Acts occurred on or after the Servicing Sale Date, the obligation and liability to cure or remedy the breach shall be part of Transferee Obligations. The responsible party (the "Responsible Party") that is obligated to cure or remedy the breach hereby agrees to discharge such obligation and liability within the time frame set forth in the Guide and the other applicable Purchase Documents (subject to any right of appeal as set forth in the Guide and such applicable Purchase Documents). The Parties agree that Freddie Mac will look solely to the Responsible Party to cure or remedy the breach unless Transferor and Transferee jointly notify Freddie Mac in writing of Transferor's and Transferee's joint finding of a different Responsible Party, in which case Freddie Mac shall follow such finding, provided that such finding (A) only relates to the substitution of a different Responsible Party, (B) does not include an alternative cure or remedy, and (C) does not extend (absent Freddie Mac's express written consent) the applicable time frame set forth in the Guide for a remedy or cure of the breach.

11

(ii)    Each of Transferor and Transferee will cooperate with the other and provide reasonable assistance to cure or remedy a breach for which it is not the Responsible Party, without impairing the Parties' rights as between each other. By way of illustration, Transferee shall cure and remedy any breaches by it after the Servicing Transfer Date even if the initial acts, errors or omissions that gave rise to the breach occurred prior to the Servicing Transfer Date.

(iii)    Nothing herein is intended to limit or otherwise impair the right of either Transferor or Transferee either to dispute between themselves the cause of a breach and the obligation or liability to cure or remedy such breach, or to pursue whatever remedies might be available to it under the Servicing Sale Agreement.

(iv)    The provisions of this Section 6(c) shall not apply to Freddie Mac's determination of whether Transferor or Transferee is responsible for any compensatory fees, as described in Section 4(e) above.

(d)    Freddie Mac consents to Transferor continuing to prosecute claims for coverage with one or more mortgage insurance companies on Freddie Mac's behalf, including negotiating settlements with such companies over coverage consistent with (i) for Transferred Mortgages that are "Covered Mortgages" (as defined in the Settlement Agreement), the terms of Section 4 of the Settlement Agreement, and (ii) for Transferred Mortgages that are not Covered Mortgages, the applicable terms of the Purchase Documents, provided that Transferor does not by this provision waive any applicable rights it may otherwise have under the Purchase Documents, at law or equity.

## 7.    Excess IO Mortgages.

Transferor must include in the Transfer of Servicing all of the residential mortgage loans as to which the related Excess Yield (as defined below) is, as of the Servicing Sale Date, included in the Stripped Interest Certificates Series 251 and 252 (such Transferred Mortgage Loans the "Excess IO Mortgages" and such securities, the "Securities"). The Excess IO Mortgages are identified by loan number in the electronic file that was e-mailed by Lee Wardlow at Transferor to Sally Baker and Tricia McKitty at Freddie Mac and Amar Patel at Transferee, on January 3, 2013, a copy of which e-mail is attached as Exhibit D-1. The population of Excess IO Mortgages was confirmed by a responding e-mail from Tricia McKitty at Freddie Mac to Lee Wardlow at Transferor and Amar Patel at Transferee on January 4, 2013, a copy of which is attached as Exhibit D-2.

In connection with the Transfer of Servicing of the Excess IO Mortgages, the following provisions will apply:

(1)    For purposes of this Section 7, the following terms have the meanings ascribed to them:

12

(a)     "Excess Yield" means with respect to any Excess IO Mortgage and each monthly remittance period for the PCs relating to such Excess IO Mortgage, the interest-rate cash flow that remains after subtracting the sum of (a) the applicable pass-through rate for the related PC, (b) the applicable guaranty fee payable to Freddie Mac, and (c) the Minimum Servicing Spread.

(b)     "Purchased Excess Yield" means the Excess Yield that was purchased from Transferor by Freddie Mac in exchange for the Securities.

(c)     "Prefunded Amount" means an amount equal to $2,677,305, as such amount may be reduced from time to time as provided in subsection 4 of Section 7, which must be maintained in the Excess Yield Custodial Account (as defined and described below).

(2)     The Parties agree that, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, from and after the Servicing Sale Date, with respect to any Excess IO Mortgage that is removed from the related PC Pool because of nonpayment by the Borrower, the following provisions will apply:

(a)     As of the date the Excess IO Mortgage is removed from the related PC Pool, Transferor, by operation of this subsection 2 of Section 7 and without further action by any of the Parties, releases, conveys, transfers, grants, and sells all of its interests, if any, in and to the Excess Yield with respect to such Excess IO Mortgage, to Freddie Mac, without representation or warranty of any kind.

(b)     Freddie Mac, by operation of this subsection 2 of Section 7 and without further action by any of the Parties, accepts the Excess Yield from Transferor.

(c)     The Parties agree that (i) in connection with each such conveyance of Excess Yield by Transferor to Freddie Mac, the Excess Yield will be immediately joined with the other incidents of the Excess IO Mortgage, all of which are henceforth solely and indivisibly owned by Freddie Mac, and (ii) the Servicing Spread with respect to each such Excess IO Mortgage will be immediately increased in an amount equal to the Excess Yield applicable to such Excess IO Mortgage.

(d)     Upon conveyance of the Excess Yield by Transferor to Freddie Mac pursuant to this subsection 2 of Section 7, the affected Mortgage will no longer be considered an Excess IO Mortgage for purposes of this Section 7.

(3)     Transferee acknowledges all of the following:

(a)     The Transfer of Servicing includes the Excess IO Mortgages.

(b)     Freddie Mac conveyed to Transferor the Excess Yield with respect to the Excess IO Mortgages.

13

(c)     The Excess Yield with respect to the Excess IO Mortgages was subsequently sold by Transferor to Freddie Mac (the "Purchased Excess Yield") in exchange for the Securities.

(d)     The Excess Yield is not part of Transferee's servicing compensation for servicing the Excess IO Mortgages and the Servicing Spread, Minimum Servicing Spread and Minimum Contract Servicing Spread for the Excess IO Mortgages are each 25 basis points, unless and until the Excess Yield is conveyed to Freddie Mac by Transferor as provided in subsection 2 of this Section 7 above.

(4)     Freddie Mac, Transferor and Transferee agree that during the period of time between the Servicing Sale Date and the Servicing Transfer Date, the Transferor, on behalf of the Transferee, will perform the duties and obligations relating to establishing, funding and reconciling the disbursement clearing custodial account for the Purchased Excess Yield in accordance with the terms of the agreements previously entered into by and between Transferor and Freddie Mac that relate to the Purchased Excess Yield.

Transferee must establish, fund and reconcile a disbursement clearing custodial account for the Purchased Excess Yield as described below.

(a)     By no later than the last Business Day before the Servicing Transfer Date, Transferee must:

     (i)     provide Freddie Mac with a complete and executed Form 1057SF-A – Letter Agreement for Servicer's Single-Family Excess Yield Custodial Account or Form 1059SF– Letter Agreement for Single-Family Principal and Interest, or P&I Disbursement Clearing Custodial Account, or Excess Yield Custodial Account, provided to Transferee by Freddie Mac, as applicable (the "Letter Agreement"); and

     (ii)     establish, and thereafter maintain, such disbursement clearing custodial account for the Purchased Excess Yield at an Eligible Depository (the "Excess Yield Custodial Account"), all as specifically described in and subject to the provisions of the Letter Agreement.

(b)     No later than the Servicing Transfer Date, Transferee must deposit in the Excess Yield Custodial Account, an amount equal to the Prefunded Amount. The Prefunded Amount maintained in the Excess Yield Custodial Account may be reduced from time to time at Transferee's request (but no more frequently than semiannually or with such increased frequency as Transferee and Freddie Mac may mutually agree upon following good faith discussion between such Parties) to an amount equal to the amount of interest that is due, as of the month of Transferee's request, on each Excess IO Mortgage in respect of the related Purchased Excess Yield.

(c)     From and after the Servicing Transfer Date, upon Transferee's receipt of Excess Yield from the applicable Borrowers, instead of placing the funds in the Excess

14

Yield Custodial Account as required by Guide Section 77.15, Transferee may maintain the Excess Yield in its general corporate cash account; provided, however, that the funds must be transferred to the Excess Yield Custodial Account as described in subsection 4(d) of this Section 7 below.

(d)    Beginning in the month following the Servicing Transfer Date and each month thereafter until the month after the Excess IO Mortgage is removed from the related PC Pool, on or before the 18th calendar day of each month (or if such day is not a Business Day, on the immediately preceding Business Day), Transferee must deposit into the Excess Yield Custodial Account an amount equal to the interest due on each Excess IO Mortgage in respect of the related Purchased Excess Yield, whether or not remitted by the applicable Borrower, all as more fully described in subsection 5 of this Section 7 below.

On the 18th calendar day of each month (or if such day is not a Business Day, on the immediately preceding Business Day) the funds in the Excess Yield Custodial Account will include the amount specified above, as well as the Prefunded Amount.

(e)    Transferee is not required to reconcile the Excess Yield maintained in its general corporate cash account nor to submit to Freddie Mac a *Principal and Interest Custodial Account Reconciliation Worksheet – Monthly Account Statement - Form 59* to reconcile the general corporate cash account with respect to the Purchased Excess Yield.

(f)    Transferee must reconcile the Purchased Excess Yield maintained in the Excess Yield Custodial Account as required by the Guide; provided however, that Transferee is not required to use nor to submit to Freddie Mac a *Principal and Interest Custodial Account Reconciliation Worksheet – Monthly Account Statement – Form 59* with respect to the Excess Yield Custodial Account. Instead, Transferee may develop a reconciliation process and worksheet form that adequately reconciles the funds in the Excess Yield Custodial Account. If Freddie Mac determines that Transferee's reconciliation of the Excess Yield Custodial Account is not adequate, Transferee must work with Freddie Mac to develop and implement processes and forms that address Freddie Mac's concerns.

For any month in which Transferee's reconciliation of the Excess Yield Custodial Account indicates that the amount of the Purchased Excess Yield to be drafted by Freddie Mac, as calculated using the applicable month's factor for the Excess IO Mortgages published by Freddie Mac, is more than one percent greater than the amount deposited by Transferee in the Excess Yield Custodial Account for the applicable month, Transferee must, by no later than the seventh Business Day of the month, submit to Freddie Mac its loan level file used to calculate such amount, and thereupon Freddie Mac and Transferee will work together on explanations and analysis in detail deemed by both Freddie Mac and Transferee to be sufficient to resolve such discrepancies.

15

(g)      Except as otherwise specifically provided for herein, the Excess Yield Custodial Account is subject to all the funding, drafting, maintenance, reconciliation and remittance requirements applicable to Freddie Mac Principal and Interest Custodial Accounts described in the Guide.

(5)      Transferee acknowledges and agrees that the following special servicing requirements apply to all Excess IO Mortgages:

(a)      In addition to advancing to Freddie Mac the scheduled interest payment on each Excess IO Mortgage whether or not remitted by the Borrower, as required under the terms of the Guide, Transferee must also advance interest due on each Excess IO Mortgage in respect of the related Purchased Excess Yield, whether or not remitted by the applicable Borrower, until the first day of the month after the date on which the Excess IO Mortgage is removed from the related PC Pool. From and after the first day of the month following the date of removal of the Excess IO Mortgage from the related PC Pool, Transferee will no longer be obligated to advance Purchased Excess Yield with respect to the payments due on the Excess IO Mortgages. For any Excess IO Mortgage that was removed from the related PC Pool because of nonpayment by the Borrower, if the Excess IO Mortgage thereafter becomes current, Transferee will not be obligated to advance or remit any Excess Yield to Freddie Mac; any such Excess Yield, having been conveyed to Freddie Mac by Transferor, will increase the Servicing Spread for the particular Excess IO Mortgage, all in accordance with subsection 2 of Section 7.

(b)      Freddie Mac will not reimburse Transferee for any Purchased Excess Yield related to any Excess IO Mortgage that Transferee has advanced to Freddie Mac, except as follows:

    (i)      In the event that Transferee advances Purchased Excess Yield which has not been received from the applicable Borrower and thereafter funds are received from the Borrower curing the delinquency, if the funds received from the Borrower are sufficient to make Transferee, as Servicer, whole for any Minimum Servicing Spread due and for reimbursable servicing expenses, including advances (other than advances of Purchased Excess Yield) made by Transferee, as Servicer, and to make Freddie Mac whole, all as provided in the Guide and the other Purchase Documents, then Transferee will be entitled to reimbursement for the amount of the advanced Purchased Excess Yield, if and to the extent the funds received from the Borrower are sufficient; or

    (ii)      In the event that Transferee advances Purchased Excess Yield which has not been received from the applicable Borrower and thereafter the Mortgage is referred to foreclosure and the Borrower subsequently exercises the right of redemption, if the Borrower redemption payment is sufficient to make Transferee, as Servicer, whole for any Minimum Servicing Spread due and for reimbursable servicing expenses, including

Case 18-80037-CRJ    Doc 48-3    Filed 10/03/18    Entered 10/03/18 20:57:27    Desc
Servicing Transfer Agreement    Page 16 of 44

advances (other than advances of Purchased Excess Yield) made by Transferee, as Servicer, and to make Freddie Mac whole, all as provided in the Guide and the other Purchase Documents, then Transferee will be entitled to reimbursement for the amount of the advanced Purchased Excess Yield, if and to the extent the Borrower redemption payment is sufficient; or

(iii) In the event that Transferee advances Purchased Excess Yield which has not been received from the applicable Borrower and thereafter the Mortgage is referred to foreclosure and the property securing the Mortgage is subsequently sold in a third party sale, if the sale proceeds are sufficient to make Transferee, as Servicer, whole for any Minimum Servicing Spread due and for reimbursable servicing expenses, including advances (other than advances of Purchased Excess Yield) made by Transferee, as Servicer, and to make Freddie Mac whole, all as provided in the Guide and the other Purchase Documents, then Transferee will be entitled to reimbursement for the amount of the advanced Purchased Excess Yield, if and to the extent the sale proceeds are sufficient.

In the case of any discrepancy between the provisions of this subsection 5(b) of Section 7 and the provision relating to reimbursement of Purchased Excess Yield advances set forth in the "Excess Servicing IO Program Guidelines" previously provided by Freddie Mac, the provisions of this subsection 5(b) of Section 7 will prevail.

(c) For Excess IO Mortgages with lender-paid mortgage insurance, if the amount of the Servicing Spread is not sufficient to pay the applicable mortgage insurance renewal premiums, Transferee is responsible for making the mortgage insurance renewal premiums, and Freddie Mac will not reimburse Transferee for such renewal premiums.

(6) If Transferee subsequently transfers Servicing of the Excess IO Mortgages, the following provisions apply:

(a) The provisions of this subsection 6 of Section 7 are not applicable to Transferred Mortgages that were formerly Excess IO Mortgages, with respect to which Transferor has conveyed the Excess Yield to Freddie Mac pursuant to subsection 2 of this Section 7 above; such Transferred Mortgages will be governed by the transfers of Servicing requirements set forth in the Guide.

(b) The transfer of Servicing must include the Servicing associated with all of the Excess IO Mortgages that are then subject to a particular class of Security.

(c) Transferee acknowledges that (i) the release by Freddie Mac of the Excess Yield and the issuance of the Security comprising the Purchased Excess Yield, and (ii) the obligations and responsibilities in connection with the Security and additional

17

obligations and responsibilities with respect to servicing the Excess IO Mortgages may limit the number of transferee servicers eligible to service the Excess IO Mortgages.

(d)     In connection with the submission by Transferee of the Form 981, in the form attached as Exhibit E hereto, *Agreement for Subsequent Transfer of Single-Family Mortgages,* Transferee must notify Freddie Mac that the transfer of Servicing pertains to Excess IO Mortgages with respect to which a Security was issued comprising the Excess Yield of the related Excess IO Mortgages.

(e)     Before the transfer of Servicing, Transferee must obtain an agreement executed by the subsequent transferee servicer stating that:

(i)     the transferee servicer acknowledges that the Servicing transfer pertains to Excess IO Mortgages owned by Freddie Mac with respect to which Freddie Mac released the Excess Yield, which Excess Yield was subsequently sold to Freddie Mac in exchange for a Security, and accordingly, the Excess Yield is not part of the transferee servicer's servicing compensation for servicing the Excess IO Mortgages;

(ii)     the transferee servicer agrees to provide Freddie Mac with a Letter Agreement and to establish, fund, reconcile and maintain an Excess Yield Custodial Account all as provided in subsection 4 of this Section 7 above;

(iii)     the transferee servicer agrees that in addition to advancing to Freddie Mac the scheduled interest payment on each Excess IO Mortgage whether or not remitted by the Borrower as required under the terms of the Guide, the transferee servicer must also advance interest due on each Excess IO Mortgage in the amount of the related Purchased Excess Yield whether or not remitted by the applicable Borrower, until first day of the month following the date on which the Excess IO Mortgage is removed from the related PC Pool; and the transferee servicer agrees that it will no longer be obligated to remit Purchased Excess Yield with respect to the payments due on the Excess IO Mortgages only from and after the first day of the month following the date of removal of the Excess IO Mortgage from the related PC Pool;

(iv)     the transferee servicer understands and acknowledges that Freddie Mac will not reimburse transferee servicer for any Purchased Excess Yield related to any Excess IO Mortgage that transferee servicer has advanced to Freddie Mac, except as follows:

(A)     in the event that the transferee servicer advances Purchased Excess Yield which has not been received from the applicable Borrower and thereafter funds are received from the Borrower curing the delinquency, if the funds received from the Borrower are sufficient

18

to make the transferee servicer, as Servicer, whole for any Minimum Servicing Spread due and for reimbursable servicing expenses, including advances (other than advances of Purchased Excess Yield) made by the transferee servicer, as Servicer, and to make Freddie Mac whole, all as provided in the Guide and the other Purchase Documents, the transferee servicer will be entitled to reimbursement for the amount of the advanced Purchased Excess Yield, if and to the extent the funds received from the Borrower are sufficient; or

(B) in the event that the transferee servicer advances Purchased Excess Yield which has not been received from the applicable Borrower and thereafter the Mortgage is referred to foreclosure and the Borrower subsequently exercises the right of redemption, if the Borrower redemption payment is sufficient to make the transferee servicer, as Servicer, whole for any Minimum Servicing Spread due and for reimbursable servicing expenses, including advances (other than advances of Purchased Excess Yield) made by the transferee servicer, as Servicer, and to make Freddie Mac whole, all as provided in the Guide and the other Purchase Documents, the transferee servicer will be entitled to reimbursement for the amount of the advanced Purchased Excess Yield, if and to the extent the Borrower redemption payment is sufficient; or

(C) in the event that transferee servicer advances Purchased Excess Yield which has not been received from the applicable Borrower and thereafter the Mortgage is referred to foreclosure and the property securing the Mortgage is subsequently sold in a third party sale, if the sale proceeds are sufficient to make the transferee servicer, as Servicer, whole for any Minimum Servicing Spread due and for reimbursable servicing expenses, including advances (other than advances of Purchased Excess Yield) made by the transferee servicer, as Servicer, and to make Freddie Mac whole, all as provided in the Guide and the other Purchase Documents, the transferee servicer will be entitled to reimbursement for the amount of the advanced Purchased Excess Yield, if and to the extent the sale proceeds are sufficient;

Freddie Mac agrees that Transferee may include in the agreement with the transferee servicer a paragraph to the effect that the provisions of the subparagraphs above regarding reimbursement of Purchased Excess Yield advances will prevail in the case of any discrepancy between such provisions and the provisions of Freddie Mac's "Excess Servicing IO Program Guidelines" relating to reimbursement of Purchased Excess Yield advances.

19

(v)    if the transferee servicer subsequently transfers Servicing of the Excess IO Mortgages, transferee servicer must first obtain the agreement of the subsequent transferee servicer to perform the obligations specified in this subsection 6 of Section 7 and to acknowledge the special servicing requirements applicable to the Excess IO Mortgages ; and

(vi)    the transferee servicer acknowledges that its obligations and responsibilities in connection with the Excess IO Mortgages may limit the number of subsequent transferee servicers eligible to service the Excess IO Mortgages.

(7)    In the event of a termination of all or any portion of Servicing with or without cause, or a transfer of all or a portion of Servicing, Transferee agrees that, in addition to the requirements set forth in Guide Chapter 73, the following provisions will apply:

(a)    The provisions of this subsection 7 of Section 7 are not applicable to Excess IO Mortgages that were formerly Excess IO Mortgages with respect to which Transferor has conveyed the Excess Yield to Freddie Mac pursuant to subsection 2 of this Section 7 above; such Mortgages will be governed by the termination or transfer of Servicing requirements set for in the Guide.

(b)    (i)    In connection with the termination of Servicing with cause, the reimbursement amount paid by Transferee to Freddie Mac pursuant to Guide Section 73.1(a)(i) will include the amount of any increase in the cost of servicing the affected Excess IO Mortgages that arises as a result of Transferee's ownership and/or the securitization of the Excess Yield; and

(ii)    In connection with the termination of Servicing without cause, Transferee acknowledges that, for purposes of determining the amount of the termination fee paid by Freddie Mac to Transferee pursuant to Guide Section 73.1(b)(ii), the market value of the Servicing portfolio being transferred will reflect (A) the amount of any diminution in the value of the Servicing that arises as a result of Transferee's ownership of the Excess Yield and (B) the amount of any increase in the cost of servicing the affected Excess IO Mortgages that arises as a result of Transferee's ownership and/or securitization of the Excess Yield;

(c)    nothing contained herein will be construed as modifying, restricting or limiting Freddie Mac's right under Guide Chapter 73 to terminate Servicing by Transferee with cause or without cause, or to transfer all or a portion of Servicing; and

(d)    except as provided herein, Guide Chapter 73 and any other applicable Purchase Documents remain unchanged.

20

## 8. **Further Assurances**.

The Parties will, from time to time, execute, acknowledge and deliver such supplements to this Agreement and such further instruments as may reasonably be required for carrying out the intention of or facilitating the performance of this Agreement, including but not limited to any amendments to agreements between Transferor, Transferee, and/or Freddie Mac that any Party may reasonably deem necessary to conform those agreements to the terms of this Agreement.

## 9. **Confidentiality**.

No Party to this Agreement shall issue or cause to be issued any announcement, press release, or other statement, or shall voluntarily disclose information concerning this Agreement (or any of the other agreements, executed contemporaneously herewith, referred to herein and specifically relating to the Transfer of Servicing) to the press or the general public, without the prior written consent of the other Parties hereto. The foregoing shall not be deemed to prevent a Party from disclosing this Agreement or the terms hereof: (i) in response to a court order, subpoena, or other demand made in accordance with applicable law by a governmental or quasi-governmental body having jurisdiction over such Party (including, without limitation, the Federal Housing Finance Agency and the Office of the Comptroller of Currency), or as otherwise required by applicable law (including, without limitation, applicable Federal securities law), or as that Party may deem reasonably necessary as part of its filings of SEC Forms 8-K, 10-Q or 10-K and related disclosures to investors (each Party will provide an advance copy to the other Parties of any such disclosure relating to this Agreement except for non public disclosures to private investors on a confidential basis); or (ii) to such Party's subsidiaries, affiliates, officers, agents, representatives, attorneys, accountants, auditors, successors, and assigns, and to qualified bidders or investors in connection with the sale of such Party or its assets, who have a need to know.

## 10. **Governing Law**.

This Agreement shall be construed, and the rights and obligations of the Parties determined, according to the laws of the United States. The laws of the State of New York are deemed to reflect the laws of the United States when there is no applicable precedent and when to do so would not frustrate any provision of this Agreement.

## 11. **Construction of Agreement**.

In the event of a dispute regarding the meaning of any language contained in this Agreement, the Parties agree that the same should be accorded a reasonable construction and should not be construed more strongly against one Party than against any other Party.

## 12. **Entire Agreement**.

This Agreement and the other documents expressly referenced herein constitute the entire agreement between the Parties hereto with respect to the subject matter hereof, and supersede any and all prior representations, statements, discussions and negotiations concerning this Agreement and the subject matter hereof which may have been made or which may have

21

occurred prior to or contemporaneously with the execution of this Agreement. This Agreement may not be amended, and none of its terms may be amended or waived, except by a writing that specifically refers to this Agreement and that expressly states that it constitutes an amendment, modification or waiver of this Agreement, and which is signed by the Party or Parties against whom enforcement of the amendment, modification or waiver is sought.

13.    **Notices.**

All notices that are required or are permitted hereunder shall be in writing and shall be: (i) hand-delivered, (ii) mailed by certified or registered U.S. Mail, return receipt requested, first class postage prepaid, or (iii) sent via facsimile transmission to the Parties as follows:

| | |
|---|---|
| if to Freddie Mac: | Freddie Mac<br>Single Family Servicing and REO<br>8200 Jones Branch Drive<br>McLean, VA  22102-3110<br>Attention:  Senior Vice President, Servicing and REO<br>Facsimile Number: (703) 903-3465 |
| with a copy to: | Freddie Mac<br>Legal Division<br>8200 Jones Branch Drive<br>McLean, VA  22102-3110<br>Attention:  Vice President and Deputy General Counsel,<br>     Single Family Real Estate Department<br>Facsimile Number: (703) 903-2559 |
| if to Transferee: | Nationstar Mortgage LLC<br>350 Highland Drive<br>Lewisville, Texas 75067<br>Attention:  Tony Villani, General Counsel<br>Facsimile Number: (972) 316-5808 |
| if to Transferor: | Bank of America<br>Bank of America Office Park<br>9000 Southside Blvd. –Bldg 400<br>Jacksonville, FL 3256-0787<br>Attn: Susan Welsh<br>Senior Vice President; Business Executive - Operations<br>Facsimile Number: (904) 987--9824 |
| With a copy to: | Bank of America<br>4500 Park Granada<br>Calabasas, CA  91302<br>Attn:  General Counsel<br>Facsimile Number: (213) 345-9266 |

22

or to such other address or facsimile number as any Party shall designate by written notice to the other Parties in the manner provided herein.

**14.** **Counterparts; Effective Date.**

This Agreement may be signed in any number of counterparts, each of which when so executed shall be an original (whether such counterpart is originally executed or an electronic copy of an original) and all of which when taken together shall constitute one and the same agreement, with the same effect as if the signatures thereto and hereto were upon the same instrument. The Parties agree that delivery of a counterpart of a signature page to this Agreement by facsimile or electronic transmission shall be effective as delivery of any original executed counterpart of this Agreement. The Parties agree to exchange original executed signature pages upon Freddie Mac's request.

**15.** **Approvals.**

Each of the Parties hereby represents and warrants that all approvals and authorizations required by law or by corporate bylaw or resolution for the execution or enforceability of this Agreement have been obtained.

**16.** **Successors; No Third Party Beneficiaries.**

(a) All terms and conditions of this Agreement shall be binding upon and inure to the benefit of successors and permitted assigns of the Parties.

(b) Nothing expressed or referred to in this Agreement is intended or shall be construed to give any person or entity other than the Parties, their respective successors and assigns, any legal or equitable right, remedy or claim under or with respect to this Agreement, or any provisions contained herein or therein, it being the intention of the Parties hereto that this Agreement, the obligations and statements of responsibilities hereunder, and all other conditions and provisions hereof are for the sole and exclusive benefit of the Parties, their respective successors and assigns, and for the benefit of no other person or entity.

(c) Notwithstanding the foregoing, neither Transferor nor Transferee may assign its rights or obligations under this Agreement without Freddie Mac's prior written consent, which consent may be granted or withheld in Freddie Mac's sole and absolute discretion.

**17.** **Captions.**

The captions assigned to provisions of this Agreement are for convenience only and shall be disregarded in construing this Agreement.

[Signatures appear on following page]

23

Signature page continued from page 23 of that certain Servicing Transfer Agreement dated as of the Effective Date.

IN WITNESS WHEREOF, intending to be legally bound hereby, the Parties have executed this Agreement as of the day and year first above written.

**FEDERAL HOME LOAN MORTGAGE CORPORATION**

By: _____ (SEAL)
Name: Bryan Pommer
Title: Vice President

**BANK OF AMERICA, N.A.**

By: _____ (SEAL)
Name: _____
Title: _____

**NATIONSTAR MORTGAGE LLC**

By: _____ (SEAL)
Name: _____
Title: _____

The following entity is executing this Servicing Transfer Agreement for the purpose of indicating its acknowledgement of, and consent to, the terms of Section 3 of this Servicing Transfer Agreement:

**COUNTRYWIDE HOME LOANS, INC.**

By: _____ (SEAL)
Name: _____
Title: _____

Signature page continued from page 23 of that certain Servicing Transfer Agreement dated as of the Effective Date.

IN WITNESS WHEREOF, intending to be legally bound hereby, the Parties have executed this Agreement as of the day and year first above written.

**FEDERAL HOME LOAN MORTGAGE CORPORATION**

By: _____ (SEAL)
Name:
Title:  Vice President

**BANK OF AMERICA, N.A.**

By: _____ (SEAL)
Name:  Ron D. Sturzehegger
Title:  Legacy Asset Servicing Executive

**NATIONSTAR MORTGAGE LLC**

By: _____ (SEAL)
Name: _____
Title: _____

The following entity is executing this Servicing Transfer Agreement for the purpose of indicating its acknowledgement of, and consent to, the terms of Section 3 of this Servicing Transfer Agreement:

**COUNTRYWIDE HOME LOANS, INC.**

By: _____ (SEAL)
Name:  Michael Schlossmann
Title:  President

Signature page continued from page 23 of that certain Servicing Transfer Agreement dated as of the Effective Date.

IN WITNESS WHEREOF, intending to be legally bound hereby, the Parties have executed this Agreement as of the day and year first above written.

**FEDERAL HOME LOAN MORTGAGE CORPORATION**

By: _____(SEAL)
Name:
Title:   Senior Vice President

**BANK OF AMERICA, N.A.**

By: _____(SEAL)
Name: _____
Title: _____

**NATIONSTAR MORTGAGE LLC**

By: _____(SEAL)
Name: _____Amar_Patel_____
Title: ___Executive Vice President___

The following entity is executing this Servicing Transfer Agreement for the purpose of indicating its acknowledgement of, and consent to, the terms of Section 3 of this Servicing Transfer Agreement:

**COUNTRYWIDE HOME LOANS, INC.**

By: _____(SEAL)
Name: _____
Title: _____

**Exhibit A-1**

**Transferred Mortgages E-mail from Bank of America to Freddie Mac**

"Wardlow, Lee"

01/03/2013 12:39 PM

To

cc

bcc

Subject FW: Urgent Project Mosaic - FHLMC Servicing Transfer Agreement

History: ⊞ This message has been replied to and forwarded.

1 attachment

MosaicFHLMCNationstarLoanNumbers-113012.zip

Forwarding on 2" of three e-mails. Please confirm receipt of each. Thank you.

**Lee Wardlow, SVP**
Portfolio Services Group
Office
Cell
Admin. Asst. Laura Fischer

---

**From:** Fuller, Sharon
**Sent:** Monday, December 31, 2012 6:50 PM
**To:** Wardlow, Lee
**Cc:** 'Edwardson, Eric J.'; Fuller, Sharon
**Subject:** Urgent Project Mosaic - FHLMC Servicing Transfer Agreement
**Importance:** High

Lee,

In accordance with the Servicing Transfer Agreement between Freddie Mac, BANA, and Nationstar, to be executed on 1/3/13, please forward the attached list to:

[]

One of the parties from FHLMC, and Amar from Nationstar, should respond to evidence receipt, and that email will become an exhibit to the contract, with the attached list, as the preliminary MSR sale population.

Thank you.

*SFI]*

*Sharon M. Fuller*
*Mortgage Servicing Portfolio Strategy*
*Bank of America*

This message w/attachments (message) is intended solely for the use of the intended recipient(s) and may contain information that is privileged, confidential or proprietary. If you are not an intended recipient, please notify the sender, and then please delete and destroy all copies and attachments, and be advised that any review or dissemination of, or the taking of any action in reliance on, the information contained in or attached to this message is prohibited. Unless specifically indicated, this message is not an offer to sell or a solicitation of any investment products or other financial product or service, an official confirmation of any transaction, or an official statement of Sender. Subject to applicable law, Sender may intercept, monitor, review and retain e-communications (EC) traveling through its networks/systems and may produce any such EC to regulators, law enforcement, in litigation and as required by law. The laws of the country of each sender/recipient may impact the handling of EC, and EC may be archived, supervised and produced in countries other than the country in which you are located. This message cannot be guaranteed to be secure or free of errors or viruses. References to "Sender" are references to any subsidiary of Bank of America Corporation. Attachments that are part of this EC may have additional important disclosures and disclaimers, which you should read.

This message is subject to terms available at the following link:
http://www.bankofamerica.com/emaildisclaimer. By messaging with Sender you consent to the foregoing.

This message, and any attachments, is for the intended recipient(s) only, may contain information that is privileged, confidential and/or proprietary and subject to important terms and conditions available at http://www.bankofamerica.com/emaildisclaimer. If you are not the intended recipient, please delete this message.

<u>Exhibit A-2</u>

**Transferred Mortgages E-mail from Freddie Mac to Bank of America**

Tricia McKitty/HQ/FHLMC
01/04/2013 04:32 PM

To  "Wardlow, Lee" ████████████████

cc

bcc

Subject  Re: FW: Urgent Project Mosaic - FHLMC Servicing Transfer
Agreement

Lee,

Freddie Mac confirms receipt of three emails from you containing the following preliminary loan
populations that are part of the servicing transfer to Nationstar in connection with the Mosaic transaction:

1) Inactive Excess IO Loans;
2) Mosaic total preliminary loan population to Nationstar; and
3) Active Excess IO Loans contained in Stripped Interest Certificate Series 251 and 252.

Thank you. --- Tricia

**Freddie Mac**
We make home possible ®

**Tricia McKitty**
Director, Servicing Capital

████████████████████

8200 Jones Branch Drive
McLean, Virginia 22102

---

"Wardlow, Lee"   "Wardlow, Lee" ████████████████    01/03/2013 12:40:21 PM

"Wardlow, Lee"
████████████████
01/03/2013 12:39 PM

To ████████████████████████

cc

Subject  FW: Urgent Project Mosaic - FHLMC Servicing Transfer
Agreement

Forwarding on 2" of three e-mails. Please confirm receipt of each. Thank you.

**Lee Wardlow, SVP**

Portfolio Services Group

███████████████

Admin. Asst: Laura Fischer ███████████

---

**From:** Fuller, Sharon
**Sent:** Monday, December 31, 2012 6:50 PM
**To:** Wardlow, Lee
**Cc:** 'Edwardson, Eric J.'; Fuller, Sharon
**Subject:** Urgent Project Mosaic - FHLMC Servicing Transfer Agreement
**Importance:** High

Lee,

In accordance with the Servicing Transfer Agreement between Freddie Mac, BANA, and Nationstar, to be executed on 1/3/13, please forward the attached list to:

████████████████████████
████████████████████████
████████████████████████

[]

One of the parties from FHLMC, and Amar from Nationstar, should respond to evidence receipt, and that email will become an exhibit to the contract, with the attached list, as the preliminary MSR sale population.

Thank you.

*SF[]*

*Sharon M. Fuller*
*Mortgage Servicing Portfolio Strategy*
*Bank of America*

████████████████████████

This message w/attachments (message) is intended solely for the use of the intended recipient(s) and may contain information that is privileged, confidential or proprietary. If you are not an intended recipient, please notify the sender, and then please delete and destroy all copies and attachments, and be advised that any review or dissemination of, or the taking of any action in reliance on, the information contained in or attached to this message is prohibited. Unless specifically indicated, this message is not an offer to sell or a solicitation of any investment products or other financial product or service, an official confirmation of any transaction, or an official statement of Sender. Subject to applicable law, Sender may intercept, monitor, review and retain e-communications (EC) traveling through its networks/systems and may produce any such EC to regulators, law enforcement, in litigation and as required by law. The laws of the country of each sender/recipient may impact the handling of EC, and EC may be archived, supervised and produced in countries other than the country in which you are located. This message cannot be guaranteed to be secure or free of errors or viruses. References to

"Sender" are references to any subsidiary of Bank of America Corporation. Attachments that are part of this EC may have additional important disclosures and disclaimers, which you should read.

This message is subject to terms available at the following link:
http://www.bankofamerica.com/emaildisclaimer. By messaging with Sender you consent to the foregoing.

This message, and any attachments, is for the intended recipient(s) only, may contain information that is privileged, confidential and/or proprietary and subject to important terms and conditions available at http://www.bankofamerica.com/emaildisclaimer. If you are not the intended

recipient, please delete this message. MosaicFHLMCNationstarLoanNumbers-113012.zip

## Exhibit B

### Form of Excess Yield Conveyance Agreement

EXCESS YIELD CONVEYANCE AGREEMENT

THIS EXCESS YIELD CONVEYANCE AGREEMENT ("Agreement") is made effective January 4, 2013, by and between Bank of America, N.A, a national banking association ("BofA"), and Federal Home Loan Mortgage Corporation, a corporate instrumentality of the United States ("Freddie Mac").

WHEREAS, Freddie Mac conveyed to BofA the Excess Yield (as defined below) with respect to the mortgages identified by loan number in the electronic file that was e-mailed by Lee Wardlow at BofA to Sally Baker and Tricia McKitty at Freddie Mac, on January 3, 2013 (the "Mortgages"), a copy of which e-mail is attached as Exhibit A-1. The population of Mortgages was confirmed by a responding e-mail from Tricia McKitty at Freddie Mac to Lee Wardlow at BofA on January 4, 2013, a copy of which is attached as Exhibit A-2;

WHEREAS, the Excess Yield was then sold and transferred to Freddie Mac in exchange for Stripped Interest Certificates Series 233, 238, 243, 251 and 252, but was subsequently removed from such Stripped Interest Certificates upon removal of the related Mortgages from the related PC Pools;

WHEREAS, BofA desires to release, relinquish and reconvey to Freddie Mac any and all interest BoA has in the Excess Yield;

NOW THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

1. The above recitals are hereby incorporated by reference herein.

2. Capitalized terms not defined in this Agreement have the meanings ascribed to them in the Freddie Mac Single-Family Seller/Servicer Guide.

3. BofA hereby releases, conveys, transfers, grants, and sells all of its interests, if any, in and to the Excess Yield with respect to the Mortgages, to Freddie Mac, without warranty of any kind.

4. Freddie Mac hereby accepts the Excess Yield from BofA.

5. The parties agree that the Excess Yield is hereby joined with the other incidents of the Mortgages, all of which are henceforth solely and indivisibly owned by Freddie Mac, and that the Servicing Spread with respect to each Mortgage is increased in an amount equal to the Excess Yield applicable to such Mortgage.

1

6. For purposes of this Agreement:

(a) "Excess Yield" means, with respect to each Mortgage, the interest-rate cash flow that remains after subtracting the sum of (i) the applicable pass-through rate for the related PC Pool, (ii) the applicable guaranty fee payable to Freddie Mac, and (iii) the Minimum Servicing Spread; and

(b) the "Minimum Servicing Spread" is twenty-five (25) basis points.

[Signatures appear on following page]

2

Signature page continued from page 2 of that certain Excess Yield Conveyance Agreement.

WITNESS the following signature and seal with the intent that this shall be deemed an instrument under seal.

BANK OF AMERICA, N.A.

By: _____(SEAL)
Name: _____
Title: _____

AGREED AND ACCEPTED:

FEDERAL HOME LOAN MORTGAGE
CORPORATION

By: _____(SEAL)
Name: _____
Title: _____

## Exhibit C

### Credit Enhancements Relating to Indemnification and Recourse

| # | Servicer Loan Number | Freddie Mac Loan Number | CE Type |
|---|---|---|---|
| 1 | ███████ | ███████ | INDEMN |
| 2 | | | RECOURSE |
| 3 | | | RECOURSE |
| 4 | | | RECOURSE |
| 5 | | | RECOURSE |
| 6 | | | RECOURSE |

## Exhibit D-1

**Excess IO Mortgages E-mail from Bank of America to Freddie Mac**



"Wardlow, Lee"

01/03/2013 12:40 PM

To

cc

bcc

Subject FW: FHLMC STA - Nationstar Active XSIO Exhibit

History: ☒ This message has been forwarded.

1 attachment

Active IO Loans - NS Pop 11-30-12.xlsx

Forwarding on third of three e-mails. Please confirm receipt.

**Lee Wardlow, SVP**
Portfolio Services Group

Admin. Aset: Laura Fischer

**From:** Fuller, Sharon
**Sent:** Thursday, January 03, 2013 8:04 AM
**To:** Wardlow, Lee
**Cc:** Bindra, Taj; 'Edwardson, Eric J.'; Fischer, Laura D
**Subject:** FHLMC STA - Nationstar Active XSIO Exhibit
**Importance:** High

Lee,

In accordance with the Servicing Transfer Agreement between Freddie Mac, BANA, and Nationstar, to be executed on 1/3/13, please forward the attached list to:

One of the parties from FHLMC, and Amar from Nationstar, should respond to evidence receipt, and that email will become an exhibit to the contract, with the attached list, as the preliminary active XSIO population as of 11/30/12.

Thanks.

SF


*Sharon M. Fuller*
*Mortgage Servicing Portfolio Strategy*
*Bank of America*



This message w/attachments (message) is intended solely for the use of the intended recipient(s) and may contain information that is privileged, confidential or proprietary. If you are not an intended recipient, please notify the sender, and then please delete and destroy all copies and attachments, and be advised that any review or dissemination of, or the taking of any action in reliance on, the information contained in or attached to this message is prohibited. Unless specifically indicated, this message is not an offer to sell or a solicitation of any investment products or other financial product or service, an official confirmation of any transaction, or an official statement of Sender. Subject to applicable law, Sender may intercept, monitor, review and retain e-communications (EC) traveling through its networks/systems and may produce any such EC to regulators, law enforcement, in litigation and as required by law. The laws of the country of each sender/recipient may impact the handling of EC, and EC may be archived, supervised and produced in countries other than the country in which you are located. This message cannot be guaranteed to be secure or free of errors or viruses. References to "Sender" are references to any subsidiary of Bank of America Corporation. Attachments that are part of this EC may have additional important disclosures and disclaimers, which you should read.

This message is subject to terms available at the following link:
http://www.bankofamerica.com/emaildisclaimer. By messaging with Sender you consent to the foregoing.


This message, and any attachments, is for the intended recipient(s) only, may contain information that is privileged, confidential and/or proprietary and subject to important terms and conditions available at http://www.bankofamerica.com/emaildisclaimer. If you are not the intended recipient, please delete this message.

**Exhibit D-2**

**Excess IO Mortgages E-mail from Freddie Mac to Bank of America**

Tricia McKitty/HQ/FHLMC
01/04/2013 04:32 PM

To  "Wardlow, Lee"

cc

bcc

Subject  Re: FW: Urgent Project Mosaic - FHLMC Servicing Transfer Agreement

Lee,

Freddie Mac confirms receipt of three emails from you containing the following preliminary loan populations that are part of the servicing transfer to Nationstar in connection with the Mosaic transaction:

1) Inactive Excess IO Loans;
2) Mosaic total preliminary loan population to Nationstar; and
3) Active Excess IO Loans contained in Stripped Interest Certificate Series 251 and 252.

Thank you. -- Tricia



Tricia McKitty
Director, Servicing Capital

8200 Jones Branch Drive
McLean, Virginia 22102

---

"Wardlow, Lee"     "Wardlow, Lee"                                    01/03/2013 12:40:21 PM

"Wardlow, Lee"

01/03/2013 12:39 PM

To

cc

Subject  FW: Urgent Project Mosaic - FHLMC Servicing Transfer Agreement

Forwarding on 2ⁿ of three e-mails. Please confirm receipt of each. Thank you.

Lee Wardlow, SVP

Portfolio Services Group
██████████  Office
        ██  Cell
Admin. Asst: Laura Fischer ██████████

**From:** Fuller, Sharon
**Sent:** Monday, December 31, 2012 6:50 PM
**To:** Wardlow, Lee
**Cc:** 'Edwardson, Eric J.'; Fuller, Sharon
**Subject:** Urgent Project Mosaic - FHLMC Servicing Transfer Agreement
**Importance:** High

Lee,

In accordance with the Servicing Transfer Agreement between Freddie Mac, BANA, and Nationstar, to be executed on 1/3/13, please forward the attached list to:

██████████████████████████████████████████
██████████████████████████████████████████
██████████████████████████████████████████

[]
One of the parties  from FHLMC, and Amar from Nationstar, should respond to evidence receipt, and that email will become an exhibit to the contract, with the attached list, as the preliminary MSR sale population.

Thank you.

*SF[]*

*Sharon M. Fuller*
*Mortgage Servicing Portfolio Strategy*
*Bank of America*

██████████████████████████████████

This message w/attachments (message) is intended solely for the use of the intended recipient(s) and may contain information that is privileged, confidential or proprietary. If you are not an intended recipient, please notify the sender, and then please delete and destroy all copies and attachments, and be advised that any review or dissemination of, or the taking of any action in reliance on, the information contained in or attached to this message is prohibited. Unless specifically indicated, this message is not an offer to sell or a solicitation of any investment products or other financial product or service, an official confirmation of any transaction, or an official statement of Sender. Subject to applicable law, Sender may intercept, monitor, review and retain e-communications (EC) traveling through its networks/systems and may produce any such EC to regulators, law enforcement, in litigation and as required by law. The laws of the country of each sender/recipient may impact the handling of EC, and EC may be archived, supervised and produced in countries other than the country in which you are located. This message cannot be guaranteed to be secure or free of errors or viruses. References to

"Sender" are references to any subsidiary of Bank of America Corporation. Attachments that are part of this EC may have additional important disclosures and disclaimers, which you should read.

This message is subject to terms available at the following link: http://www.bankofamerica.com/emaildisclaimer. By messaging with Sender you consent to the foregoing.

This message, and any attachments, is for the intended recipient(s) only, may contain information that is privileged, confidential and/or proprietary and subject to important terms and conditions available at http://www.bankofamerica.com/emaildisclaimer. If you are not the intended

recipient, please delete this message. MosaicFHLMCNationstarLoanNumbers-113012.zip