Official Form 410A

# Instructions for Mortgage Proof of Claim Attachment

United States Bankruptcy Court                                                                 12/15

## Introduction

This form is used only in individual debtor cases. When required to be filed, it must be attached to *Proof of Claim* (Official Form B410) with other documentation required under the Federal Rules of Bankruptcy Procedure.

## Applicable Law and Rules

Rule 3001(c)(2)(A) of the Federal Rules of Bankruptcy Procedure requires for the bankruptcy case of an individual that any proof of claim be accompanied by a statement itemizing any interest, fees, expenses, and charges that are included in the claim.

Rule 3001(c)(2)(B) requires that a statement of the amount necessary to cure any default be filed with the claim if a security interest is claimed in the debtor's property.

If a security interest is claimed in property that is the debtor's principal residence, Rule 3001(c)(2)(C) requires this form to be filed with the proof of claim. The form implements the requirements of Rule 3001(c)(2)(A) and (B).

If an escrow account has been established in connection with the claim, Rule 3001(c)(2)(C) also requires an escrow statement to be filed with the proof of claim. The statement must be prepared as of the date of the petition and in a form consistent with applicable nonbankruptcy law.

## Directions

### Definition

This form must list all transactions on the claim from the *first date of default* to the petition date. The *first date of default* is the first date on which the borrower failed to make a payment in accordance with the terms of the note and mortgage, unless the note was subsequently brought current with no principal, interest, fees, escrow payments, or other charges immediately payable.

### Information required in Part 1: Mortgage and Case Information

Insert on the appropriate lines:

- the case number;
- the names of Debtor 1 and Debtor 2;
- the last 4 digits of the loan account number or any other number used to identify the account;
- the creditor's name;
- the servicer's name, if applicable; and
- the method used to calculate interest on the debt (i.e., fixed accrual, daily simple interest, or other method).

**Information required in Part 2: Total Debt Calculation**

Insert:

- the principal balance on the debt;
- the interest due and owing;
- any fees or costs owed under the note or mortgage and outstanding as of the date of the bankruptcy filing; and
- any *Escrow deficiency for funds advanced*— that is, the amount of any prepetition payments for taxes and insurance that the servicer or mortgagee made out of its own funds and for which it has not been reimbursed.

Also disclose the *Total amount of funds on hand*. This amount is the total of the following, if applicable:

- a positive escrow balance,
- unapplied funds, and
- amounts held in suspense accounts.

Total the amounts owed—subtracting total funds on hand—to determine the total debt due.

Insert this amount under *Total debt*. The amount should be the same as the claim amount that you report on line 7 of Official Form 410.

**Information required in the Part 3: Arrearage as of the Date of Petition**

Insert the amount of the principal and interest portion of all prepetition monthly installments that remain outstanding as of the petition date. The escrow portion of prepetition monthly installment payments should not be included in this figure.

Insert the amount of fees and costs outstanding as of the petition date. This amount should equal the *Fees/Charges balance* as shown in the last entry in Part 5, Column P.

Insert any *escrow deficiency for funds advanced*. This amount should be the same as the amount of *escrow deficiency* stated in Part 2.

Insert the *Projected escrow shortage* as of the date the bankruptcy petition was filed. The *projected escrow shortage* is the amount the claimant asserts should exist in the escrow account as of the petition date, less the amount actually held. The amount actually held should equal the amount of a positive escrow account balance as shown in the last entry in Part 5, Column O.

This calculation should result in the amount necessary to cure any prepetition default on the note or mortgage that arises from the failure of the borrower to satisfy the amounts required under the Real Estate Settlement Practices Act (RESPA). The amount necessary to cure should include 1/6 of the anticipated annual charges against the escrow account or 2 months of the monthly pro rata installments due by the borrower as calculated under RESPA guidelines. The amount of the projected escrow shortage should be consistent with the escrow account statement attached to the *Proof of Claim*, as required by Rule 3001(c)(2)(C).

Insert the amount of funds on hand that are unapplied or held in a suspense account as of the petition date.

Total the amounts due listed in Part 3, subtracting the funds on hand, and insert the calculated amount in *Total prepetition arrearage*. This should be the same amount as "Amount necessary to cure any default as of the date of the petition" that your report on line 9 of Official Form 410.

**Information required in Part 4: Monthly Mortgage Payment**

Insert the principal and interest amount of the first postpetition payment.

Insert the monthly escrow portion of the monthly payment. This amount should take into account the receipt of any amounts claimed in Part 3 as escrow deficiency and projected escrow shortage. Therefore, a claimant should assume that the escrow deficiency and shortage will be paid through a plan of reorganization and provide for a credit of a like amount when calculating postpetition escrow installment payments.

Claimants should also add any monthly private mortgage insurance amount.

Insert the sum of these amounts in *Total monthly payment*.

**Information required in Part 5: Loan Payment History from the First Date of Default**

Beginning with the First Date of Default, enter:

- the date of the default in Column A;
- amount incurred in Column D;
- description of the charge in Column E;
- principal balance, escrow balance, and unapplied or suspense funds balance as of that date in Columns M, O, and Q, respectively.

For (1) all subsequently accruing installment payments; (2) any subsequent payment received; (3) any fee, charge, or amount incurred; and (4) any escrow charge satisfied since the date of first default, enter the information in date order, showing:

- the amount paid, accrued, or incurred;
- a description of the transaction;
- the contractual due date, if applicable;
- how the amount was applied or assessed; and
- the resulting principal balance, accrued interest balance, escrow balance, outstanding fees or charges balance, and the total unapplied funds held or in suspense.

If more space is needed, fill out and attach as many copies of *Mortgage Proof of Claim Attachment: Additional Page* as necessary.

# Understanding Official Form 410A



**Michael J. McCormick**
Senior Partner
McCalla Raymer
Pierce, LLC

**Background**

Official Form 410A (herein, "Form 410A" or "the Form") went into effect on December 1, 2015 and replaced the Mortgage Proof of Claim Attachment (herein, "Form B10A") that had been used by mortgage servicers since December, 2011.

Like Form B10A, Form 410A is only required if the subject property or collateral securing the claim is the debtor's principal residence. Although there is no required attachment for a proof of claim (PoC) involving a property other than the debtor's principal residence, it is important to remember Fed. R. Bankr. P. 3001 has not changed. Therefore, the same information that was required to be provided with a PoC prior to December 1, 2015 is still required. Accordingly, since many servicers elected to use Form B10A for all PoCs, one suggestion for servicers is to continue using Form B10A where the subject property is not the debtor's principal residence.

The drafters of the Form believed the new format was something that could be automated and attached to the PoC (Official Form 410). It was also believed the format would make it easier for a debtor to see the basis for the mortgage claim and the arrearage amount.

As a result, the new Form will be more transparent and can be completed more easily and more accurately than former B10A.

Fed. R. Bankr. P. 9009 mandates use of this form nationwide. Not only should local variations be prohibited, mortgage servicers must use <u>and complete</u> the Form according to the instructions as opposed to using their own payment history form or attaching their own payment history to the Form.

Form 410A includes two (2) pieces of information that were not included on former B10A:

- The amount of the post-petition mortgage payment (and its breakdown)
- Calculation of the total claim

Form 410A appears below. There are five parts, and each part will be discussed in this article:

- Part 1: Mortgage and Case Information in the top left
- Part 2: Total Debt Calculation
- Part 3: Arrearage as of Date of the Petition
- Part 4: Breakdown of the Monthly Mortgage Payment
- Part 5: Loan History from the First Date of Default

**Mortgage Proof of Claim Attachment** (12/15)

*If you file a claim secured by a security interest in the debtor's principal residence, you must use this form as an attachment to your proof of claim. See separate instructions.*

| Part 1: Mortgage and Case Information | Part 2: Total Debt Calculation | Part 3: Arrearage as of Date of the Petition | Part 4: Monthly Mortgage Payment |
|---|---|---|---|
| Case number: | Principal balance: | Principal & interest due: | Principal & interest: |
| Debtor 1: | Interest due: | Prepetition fees due: | Monthly escrow: |
| Debtor 2: | Fees, costs due: | Escrow deficiency for funds advanced: | Private mortgage insurance: |
| Last 4 digits to identify: | Escrow deficiency for funds advanced: | Projected escrow shortage: | Total monthly payment: |
| Creditor: | Less total funds on hand: − | Less funds on hand: − | |
| Servicer: | Total debt: | Total prepetition arrearage: | |
| Fixed accrual/daily simple interest/other: | | | |

**Part 5: Loan Payment History from First Date of Default**

| | Account Activity | | | | | | How Funds Were Applied/Amount Incurred | | | | Balance After Amount Received or Incurred | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| A. | B. | C. | D. | E. | F. | G. | H. | I. | J. | K. | L. | M. | N. | O. | P. | Q. |
| Date | Contractual payment amount | Funds received | Amount incurred | Description | Contractual due date | Prin, int & esc past due balance | Amount to principal | Amount to interest | Amount to escrow | Amount to fees or charges | Unapplied funds | Principal balance | Accrued interest balance | Escrow balance | Fees / Charges balance | Unapplied funds balance |

Case 18-80037-CRJ Doc 48-15 Filed 10/03/18 Entered 10/03/18 20:57:27 Desc PoC Guidelines Page 4 of 12

The loan history shows:

- When payments are due
- When the debtor made payments
- How payments were applied
- When fees and charges were incurred
- What the balances were for various components of the loan after amounts were received or fees and charges were incurred

**The First Date of Default**

The Form requires a home mortgage claimant to provide a loan history starting with the first date of default. This term or definition has garnered a lot of focus, an understandably so, because if this date is interpreted incorrectly, then the mortgage servicer may use an incorrect starting point for the history.

According to the instructions to the Form, the first date of default is the first date on which the borrower failed to make a payment in accordance with the terms of the note and mortgage:

- unless the note was subsequently brought current with no principal, interest, fees, escrow payment, or other charges "immediately payable"

In essence, if the servicer wishes to recover a fee or charge from several years ago, even if the loan might have been current with respect to payments, it will be necessary to start the payment history at that point, or earlier. To the extent the mortgage servicer is able to fully automate the process of completing Form 410A, this will not be an issue. Otherwise, the servicer may have to perform a cost/benefit analysis and make a business decision to waive fees or costs.

For some mortgage servicers, the requirement to begin the history at the first date of default may present a challenge, especially where the servicer may have acquired a loan (or a pool of loans) or otherwise does not have sufficient information to complete the history. If the mortgage servicer is unable to come up with the detailed information necessary to complete Part 5 of the Form (e.g., computer records, invoices, receipts, canceled checks, or county tax records), the servicer may need to waive various fees and costs. The same would also apply to delinquent payments since the history (as well as the declaration in Part 3 of Form 410) needs to reflect any payments made by the debtor since the first date of default.

**Loan Modifications**

The consensus among the trustees, servicers and attorneys who are members of the NACTT Mortgage Committee is that if a loan has been modified in a manner which capitalizes all the delinquency as of the effective date of the loan modification agreement, including, but not limited to, principal, interest, fees, and escrow, said loan is considered current as of the effective date of the loan modification for purposes of determining "the first date of default" within Part 5 of the Form. That means the first date of default would now be a date sometime after the effective date of the loan modification if the debtor failed to make a payment according to the terms of the note and mortgage (as modified by the loan modification agreement).

**Part 1**

```
Part 1: Mortgage and Case Information
Case number:                    _____
Debtor 1:                       _____
Debtor 2:                       _____
Last 4 digits to identify:      __ __ __ __
Creditor:                       _____
Servicer:                       _____
Fixed accrual/daily
simple interest/other:          _____
```

Part 1 of the Form is relatively simple to complete. This part contains mortgage and case information, and the information here should match the information that appears in Box 1 on Form 410, the Official PoC form.

There are spaces for the case number, the names of each debtor (if it is a joint case), the last 4 digits of the loan number (or whatever account number the servicer uses to identify the debtor), the creditor's name from Box 1 on Form 410, and the name of the servicer from Box 3 on Form 410.

Finally, there is a place for the servicer to indicate how interest is calculated. This is additional information that was not included on Form B10A. It is here that the mortgage servicer indicates whether the loan is a daily simple interest loan, fixed accrual, or that interest accrues according to some other method. Note this is a little bit different and more detailed than indicating whether the loan is fixed or variable as is required in Box 4 of former Form B10, and as required in Box 9 of new Form 410.

**Part 2**

Part 2 is the part of the Form where the total debt as of the date the case is filed is calculated. At the bottom of the column there is a row for the total debt, surrounded by a black border. The total debt is the sum of the top four (4) rows in the columns less the

CONTINUED NEXT PAGE ▶

Case 18-80037-CRJ    Doc 48-15    Filed 10/03/18    Entered 10/03/18 20:57:27    Desc PoC Guidelines    Page 5 of 12

**Part 2: Total Debt Calculation**

Principal balance: _____
Interest due: _____
Fees, costs due: _____
Escrow deficiency for funds advanced: _____
Less total funds on hand: − _____
Total debt: _____

total amount of funds on hand.

The first three (3) numbers are relatively simple. The principal balance, interest due, and the total of "any fees or costs owed under the note or mortgage and outstanding as of the date of the bankruptcy filing" (see the instructions to Form 410A) are added together.

As will be seen when Part 5 of the Form is discussed, several of these numbers come from the payment history. For example, the principal balance should be the entry in Column M in the last row of the history. The total for fees and charges will come from Column P in the same row.

The next amount to look at is the escrow deficiency for funds advanced. The instructions to Form 410 define this term as "the amount of any prepetition payments for taxes and insurance that the servicer or mortgagee made out of its own funds and for which it has not been reimbursed." Put another way, this is the negative balance in the escrow account on the date the petition is filed. This figure will also come from the last row of the history: Column O. The mortgage servicer will want to take care to enter this number as a positive number because this is an amount to be recovered from the debtor. This step is consistent with a payoff and including the escrow deficiency amount in the payoff.

Next, the debtor should be given credit for the total amount of funds on hand. This amount is the total of the following, if applicable:

• **a positive escrow balance**,

• unapplied funds, and

• amounts held in suspense accounts.

At first glance, some might be wonder why the debtor is given credit for the positive balance in the escrow account. It is important to remember in Part 2, the total debt is being calculated, as opposed to the amount of the arrears. Second, giving the debtor creditor for a positive balance in the escrow account is similar to when a borrower pays off the loan. If there is a positive balance in the escrow account, the borrower would either get a check for that balance or the amount would be credited against the payoff balance. So when the total debt is calculated for purposes of Part 2 of the Form, the borrower should be given credit for any positive amount in the escrow account.

Obviously the escrow account cannot be both positive and negative at the same time. So if the escrow account was positive on the day the bankruptcy case was filed, nothing should be entered on the escrow deficiency line above.

Adding the first three lines and subtracting the fourth line will provide the number for the total debt. The amount should be the same as the claim amount reported in Box 7 of Official Form 410.

**Part 3**

**Part 3: Arrearage as of Date of the Petition**

Principal & interest due: _____
Prepetition fees due: _____
Escrow deficiency for funds advanced: _____
Projected escrow shortage: _____
Less funds on hand: − _____
Total prepetition arrearage: _____

Undoubtedly, Part 3 has generated the majority of the questions and concerns with the new Form.

**Principal & Interest Due**

On the first line of Part 3, the mortgage servicer should insert the aggregate of the principal and interest component of each regular monthly payment outstanding as of the date the bankruptcy case was filed, taking into consideration changes that have occurred in the amount of the monthly payment. *Importantly, the servicer should not include the escrow portion of any payment missed.*

**Prepetition Fees Due**

On the second line of Part 3, the mortgage servicer should insert the amount of fees and costs outstanding as of the petition date. This amount should equal the *Fees/Charges balance* as shown in the last entry in Part 5, Column P of the Form. This amount should also be the same amount that was entered in Part 2 of the Form for "Fees, costs due."

Case 18-80037-CRJ    Doc 48-15    Filed 10/03/18    Entered 10/03/18 20:57:27    Desc
PoC Guidelines    Page 6 of 12

**Escrow deficiency for Funds Due**

The third line of Part 3 is for the *escrow deficiency for funds advanced*. This amount should be the same as the amount of the *escrow deficiency* stated in Part 2 of the Form. This amount comes from the last entry in column O of Part 5 of the Form, if and only if the amount is negative. Importantly, the amount entered should be the absolute value or positive amount of the escrow deficiency.

**Projected Escrow Shortage**

On the fourth line of Part 3, the mortgage servicer should insert the escrow shortage from the escrow analysis performed pursuant to Federal Bankruptcy Rule 3001 and Regulation X under RESPA. *However, if the escrow balance on the day the bankruptcy case is filed is negative (i.e., the last entry in Column O is negative), the escrow analysis should be performed with the assumption there is a zero balance in the escrow account. On the other hand, if the escrow account is positive, the starting balance for the escrow analysis should be the actual amount in the escrow account (i.e., the last entry in Column O of Part 5).*

Although not discussed in the instructions to Form 410A (or Regulation X), the intent of the drafters of Form 410A in including a separate line for the escrow deficiency and the escrow shortage (and starting the escrow analysis at zero) was to minimize the possibility of "double dipping" and measure the "true" escrow shortage at the time the bankruptcy case was filed. Unfortunately, this requirement represents a challenge for mortgage servicers since the requirement to start the escrow analysis at zero (when the escrow balance at the time the bankruptcy case is filed is negative) means a programming change for borrowers in bankruptcy only, and only for the first post-petition escrow analysis.[1]

The escrow shortage should be the difference between the target balance or what should be in the account, and the actual balance actually held, taking into consideration the allowable cushions under RESPA and Regulation X. 12 CFR § 1024.17.

*Note: the escrow portion of missed prepetition mortgage payments should not be recovered as a separate line item. Nor should the escrow portion of missed prepetition mortgage payments be added to the shortage calculated from the first post-petition escrow analysis.*

**Funds on Hand**

On the fifth line of Part 3, it is necessary to calculate the total of the following amounts:
  unapplied funds, and
  amounts held in suspense accounts.

This amount is different from the amount in part 2 of the Form for "total funds on hand" since it does not include any positive escrow balance.

**Total Arrearage**

The sixth line of Part 3, i.e., the Total Arrearage, is the total of lines one through four of Part 3 (Principal & Interest + Prepetition Fees + Escrow Deficiency + Escrow Shortage) less the fifth line in Part 3 (Funds on Hand).

This amount should be the same number that appears on the line labeled "Amount necessary to cure any default as of the date of the petition" in Box 9 on Form 410.

What if the Debtor's plan includes one or two post-petition mortgage payments? Since there is nowhere on the Form to include post-petition amounts, one suggestion is to add a couple of lines at the bottom of Part 3 for the post-petition amount to be included, and then the total arrears. It is important to remember, however, that the amount of the post-petition payments would need to be the full payment, i.e., including the escrow portion of the regular monthly payment. Moreover, the amount of the post-petition payment should be the monthly payment as calculated in Part 4 of Form 410A (i.e., including the escrow component).

**Part 4**

```
Part 4: Monthly Mortgage Payment

Principal & interest:       _____

Monthly escrow:             _____

Private mortgage
insurance:                  _____

Total monthly
payment:                    _____
```

This is the part of the Form where the post-petition mortgage payment is calculated.

As expected, the first line is for principal and interest (P&I) portion of the payment. This isn't a number that is calculated on the Form; rather, the amount comes from the servicer's system.

The next line is for showing the escrow portion of the post-petition mortgage payment. Since the escrow deficiency and the escrow shortage existing on the date the case was filed are being paid through the proof of claim (see Part 3), the amount on this line should be

CONTINUED NEXT PAGE ▶

Case 18-80037-CRJ    Doc 48-15    Filed 10/03/18    Entered 10/03/18 20:57:27    Desc PoC Guidelines    Page 7 of 12

the "raw" escrow component, i.e., the amount needed to fund the anticipated disbursements for taxes and insurance for the next twelve (12) months, pro-rated on a monthly basis. For those familiar with Regulation X and the escrow process, this would be Step 2 of 5. 12 CFR § 1024.17(d)(2).

The next line is for PMI, if applicable.

The consensus among trustees and those representing servicers is that if the borrower is paying for additional amounts in the monthly payment, e.g., credit life insurance, it would be okay to add a line in Part 4 to show the monthly component for those products.

**Part 5**

The columns in Part 5 (below) are separated into three groups. The first group, "Account Activity" (columns A-G), is for describing the transaction or loan activity. The second group, "How Funds Were Applied/Amount Incurred" (columns H-L), is for indicating how funds were applied or allocated, or how a fee or disbursement impacted the account. In this way, Part 5 has been set up similar to a double entry accounting system: for every entry in columns A-G, there is at least one corresponding entry in columns H-L.

The third and final group of columns, "Balance After Amount Received or Incurred" (columns M-Q) shows how various balances are impacted by each transaction. Importantly, the changes to these columns should be based off the changes in the second group of columns rather than the first group of columns.

Beginning with the first date of default, the mortgage servicer will enter each transaction that affects the account, and also keep track of missed payments.

Column A is for the date of each transaction, Column C for funds received, Column D for the amount incurred, and Column E for the description of the transaction.

For example, if the mortgage servicer assessed a late charge on August 16, 2015 for a payment missed in August, the servicer would put August 16, 2015 in Column A, the amount of the late charge in Column D, and the words "Late Charge" in Column E. A corresponding entry for the amount of the late charge would appear in Column K. Finally, the balance in Column P (Fees/Charges balance) will increase by the same amount as the entry in Column K.

The history would also show the principal balance, escrow balance, and unapplied or suspense funds balance as of the same date in Columns M, O, and Q, respectively. Of course, there should be no change to these three columns as a result of a late charge being assessed.

The mortgage servicer will continue this process through the date the bankruptcy case was filed for:

(1) all subsequently accruing installment payments;

(2) any subsequent payment received;

(3) any fee, charge, or amount incurred; and

(4) any escrow charge satisfied since the date of first default

To emphasize, the following information is entered in chronological order:

• the amount paid, accrued, or incurred

• description of the transaction

• contractual due date

• how the amount was applied or assessed

• the resulting principal balance, accrued interest balance, escrow balance, outstanding fees or charges balance, and the total unapplied funds held or in suspense

Let's suppose the debtor subsequently made a payment toward the late charge balance. This time the entries in Columns D and K will be negative, thus reducing the running balance in column P.

Now let's suppose the monthly payment is $1,500 and the loan is escrowed ($1,000 for principal; $200 for interest; and $300 for escrow), and the servicer receives $1,550 from the debtor on October 1, 2015 for the October, 2015 regular monthly installment. The first two groups of columns should be populated as follows:

    Column A:    10/01/2015
    Column B:    $1,500.00
    Column C:    $1,550.00
    Column D:    blank

**Part 5 : Loan Payment History from First Date of Default**

| Account Activity | | | | | | | How Funds Were Applied/Amount Incurred | | | | | Balance After Amount Received or Incurred | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| A. Date | B. Contractual payment amount | C. Funds received | D. Amount incurred | E. Description | F. Contractual due date | G. Prin, int & esc past due balance | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal balance | N. Accrued interest balance | O. Escrow balance | P. Fees / Charges balance | Q. Unapplied funds balance |
|  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |  |

Case 18-80037-CRJ   Doc 48-15   Filed 10/03/18   Entered 10/03/18 20:57:27   Desc
PoC Guidelines   Page 8 of 12

| | |
|---|---|
| Column E: | Regular Payment |
| Column F: | 10/01/2015 |
| Column G: | blank (since the loan is current) |
| Column H: | $1,000.00 |
| Column I: | $200.00 |
| Column J: | $300.00 |
| Column K: | blank |
| Column L: | $50.00 |

Column M (principal balance) will decrease by the same amount of the entry in Column H, i.e., $1,000.00. Column O will increase by the same amount as the entry in Column J, i.e., $300.00. There will be no change to the balance in Column P, but the balance in Column Q will increase by the same amount as the entry in Column L, i.e., $50.00.

Finally, let's suppose the servicer made a disbursement for county taxes in the amount of $750.00 on November 15, 2015, and the November 1, 2015 regular monthly installment had not been received yet by the servicer. The first two groups of columns should be populated as follows:

| | |
|---|---|
| Column A: | 11/15/2015 |
| Column B: | $1,500.00 |
| Column C: | blank |
| Column D: | $750.00 |
| Column E: | County Taxes |
| Column F: | 11/01/2015 |
| Column G: | $1,500.00 |
| Column H: | blank |
| Column I: | blank |
| Column J: | -$750.00 |
| Column K: | blank |
| Column L: | blank |

There will be no change to Column M (principal balance), Column P (fees), or Column Q (unapplied funds). Column O will increase by the same amount as the entry in Column J, i.e., -$750.00. In other words, Column O will decrease by $750.00.

Although not discussed in the instructions to the Form, at least one of the drafters of the Form has indicated that Column N, which is labeled Accrued Interest balance, is for daily simple interest loans only.

On another note, Column G keeps a running balance of the total missed payments (including escrow, if applicable). Arguably, for purposes of the Form, this amount does not provide very useful information. There has already been some discussion among members of the NACTT Mortgage Committee about altering this column in the future so that Column G only keeps running balance of the total P&I portion of each missed payment. The end result would be that the last entry in Column G would be the amount needed for the first row in Part 3.

As previously discussed, the principal balance, escrow balance, fees balance, and unapplied funds balance on the date the bankruptcy case was filed should be the figures in the last row of the history for Columns M, O, P, and Q, respectively. If the amount at the bottom of Column O is negative, this is the amount of the escrow deficiency to be entered in Parts 2 and 3 of Form 410A.

**Conclusion**

The adoption of Form 410A has created a lot of discussion and questions since it was first published for public comment. Fortunately, there have been many training sessions and webinars to help practitioners understand the new Form, including by the NACTT Academy. In addition, the NACTT Mortgage Committee has been meeting since early 2015 to discuss the Form and is in the process of recommending proposed guidelines for the Form. ◉

**FOOTNOTES**

[1] *Hosley v. Wells Fargo Bank of Minnesota*, 2008 WL 5169553, *2 (N.D.N.Y)(citing *In re Cole*, 202 BR 375 (Bankr. E.D. Pa. 1996)(mortgagee may seek escrow deficits); *In re Rodriguez*, 391 B.R. 723, 731 (Bankr. D.N.J. 2008)(mortgage "is entitled as a matter of law, to calculate and collect the shortage contribution as part of the post-petition monthly escrow deposit")).

*continued from page 11 –* **NCBJ**

recognize that the members of our organization are first and foremost consumer judges and understanding the world of the Chapter 13 Trustee can only make us better judges. I am pleased to be invited to participate in your annual meeting in Philadelphia in July (I won't call it a convention – July in Philly has another one of those going on!) and I hope to see many of you in San Francisco. ◉

Case 18-80037-CRJ    Doc 48-15    Filed 10/03/18    Entered 10/03/18 20:57:27    Desc
PoC Guidelines    Page 9 of 12

**United States Bankruptcy Official Forms 410 & 410A – Guidelines for Mortgage Creditors**

**Published by: National Association of Chapter 13 Trustees, Mortgage Committee[1]**

**Issued: May 19, 2017**

**Purpose:** These Guidelines were developed by the Mortgage Committee of the National Association of Chapter 13 Trustees, a committee comprised of Chapter 13 Trustees, mortgage servicing company representatives and attorneys, in an attempt to provide practical guidance around certain portions of the Official Bankruptcy Forms 410 and 410A. These Guidelines are not requirements under the United States Bankruptcy Code or related rules. The Committee developed these Guidelines to provide suggestions that will provide clarity, consistency and uniformity for completion of the forms.

**Guidelines:**

1. If the Escrow Account balance is <u>negative</u> at the time of the bankruptcy filing:
    a. the fields in Part II and Part III entitled "Escrow Deficiency" should be populated with the amount of such deficiency; and
    b. the final balance in Column O (Escrow Balance), in Part V, should match the figures in the fields in Part II and Part III entitled "Escrow Deficiency."

2. If the Escrow Account is <u>positive</u> at the time of the bankruptcy filing:
    a. the field in Part II entitled "Less Total Funds on Hand" should be populated with the amount of this positive balance, plus any amounts in suspense; and
    b. this positive balance should not be included in the "Less Funds on Hand" field in Part III.
    c. "$0.00" or "NA" should be inserted in the fields entitled "Escrow Deficiency" within Parts II and III.

3. If the Escrow Account is $0.00 at the time of bankruptcy filing:
    a. "$0.00" or "NA" should be inserted in the fields entitled "Escrow Deficiency" within Parts II and III.
    b. the final balance in Column O (Escrow Balance), in Part V, should reflect "$0.00"

4. The field in Part III entitled "Less Funds on Hand" should be populated with the amount of funds in suspense at the time of the bankruptcy filing. This field should not include a positive balance in the Escrow Account.

5. While not required, there is nothing within the Official Form which would prohibit the history set forth in Part V to start on the month prior to the current default which is the basis of the arrearage claim.

6. Loans that are in the pendency of a Trial Modification Plan are not considered current for purposes of determining "the first date of default" within Part V.

7. Number 2 of Part 1 of the 410 Form should only be checked "Yes" if the claim was acquired by the entity filing the POC after the filing of the bankruptcy case.

---

[1] The Committee agrees that these Guidelines will not be distributed in their final form until the Official Bankruptcy Form 410A is posted on the Administrative Office of the US Court's website.

8. A loan that has been modified in a manner which capitalizes all of the delinquency as of the effective date of the loan modification, including, but not limited to, principal, interest, fees, and escrow, is considered current as of the effective date of the loan modification for purposes of determining "the first date of default" within Part V.

9. Where an amended claim ("APOC") is required following a post confirmation loan modification and the district requires strict use of the 410A with the 410, only sections 1-4 of the 410A should be completed as follows:
    a. Part 1 – Reflect any updates to the note interest type as a result of the modification
    b. Part 2- Principal balance should reflect the PB post loan modification.   Only the Principal Balance and Total Debt fields should be completed.
    c. Part 3 – Only complete the "Total Prepetition Arrearage" line and the amount disclosed should match the amount received from the chapter 13 trustee on the arrearage claim prior to the modification.  Note: Pre-petition amounts received from the trustee after the effective date of the loan modification should be returned to the trustee.
    d. Part 4 – Should be completed to reflect the amount and breakdown of the first post loan modification payment.  Indicate the 1st date that payment amount is due.
    e. The Loan Modification Agreement should be attached to the amended claim.  Loan documents may be attached if required by local rule or practice.
    f. A disclaimer such as the following may be added to the APOC:

    "NOTICE: This Proof of Claim is being amended in connection with a loan modification, which has impacted the arrearage included in the initial Proof of Claim.  Please disregard the figures set forth in the original Proof of Claim."

    Note: Parts a through f of this Guideline only apply to situations where any outstanding arrearages will no longer be paid through the plan.  Do not use this Guideline in cases where arrearage will still be paid through the Bankruptcy Plan.

    g. Part 5 should not be completed.

11. Daily Simple Interest - On the 410A Form, Column N "Accrued Interest Balance" only needs to be completed if the loan is a Daily Simple Interest Loan. If the loan is not a Daily Simple Interest Loan, then the Column should be left blank.

12. Reverse Mortgages

- Part 1 of the 410A
    - Identify that the mortgage is a reverse mortgage on the "Fixed accrual / daily simple interest / other" line as well as on the 410 form in box 9.
- Part 2 (Total Debt) of the 410A form
    - Servicers / mortgagees may add a line(s) to allow the incorporation of line items that impact the amount of the total debt
- Part 3 (Arrearage) of the 410A form should only reflect a balance where there is an advance balance that the servicer / mortgagee requires cured.
    - Only those fees and costs associated with the default, and not part of regular monthly servicing, should be listed.

- Part 4 (Monthly Mortgage Payment) of the 410A form should not list a monthly payment. Servicers / mortgagees should fill the lines with "N/A" or "not applicable"
- Part 5 (Loan Payment History) of the 410A form should only completed if there are amounts that Servicer considers past due at the time of the bankruptcy filing:
    - Column C labeled "Funds Received" should only be used to reflect money received from the borrower.
    - Column J labeled "Amount to Escrow" and Column O labeled "Escrow Balance" are inaccurate as the loan is and remains a non-escrowed account. Servicers / mortgagees may change the names of those columns. E.g. Column J: "Amount to non-escrow balance" and Column O: "Non-escrow advance balance."
    - Column D labeled "Amount Incurred" combined with Column E labeled "Description" should be used to reflect only that tax, insurance, fee, or charges paid out on the borrowers behalf and has been assessed to the account. A second disclosure under "Column J" on the same line for the same amount is not required.
    - Servicers / mortgagees should list out separately individual advances for pre-petition default related taxes, insurance, fee, or charges even if they would show as part of the balance due.
    - Column J as re-labeled as "Amount to non-escrow balance" should only reflect those monies applied to the non-escrow balance from the borrower.
- Include an addendum (or footnote) information, as needed, about: Terms specific to a reverse mortgage, including expectations regarding payment in full, ability to draw on lines of credit, calculation of principal balance, if the reason for the default is due to non-monetary reasons such as failure to repair, and non-escrow status requiring the Debtor to make all future tax and insurance payments when due.
- Servicer / Mortgagee may attach other explanatory ledgers or information to support the principal balance.