## UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | | |
|---|---|---|
| In the Matter of: | } | |
| RUSSELL NELSON | } | CASE NO. 15-83360-CRJ-13 |
| SSN:   XXX-XX-4643 | } | |
| DEBORAH NELSON | } | |
| SSN:   XXX-XX-5310 | } | CHAPTER 13 |
| | } | |
| Debtor(s). | } | |
| | | |
| | } | AP NO. 18-80037-CRJ-13 |
| RUSSELL NELSON | } | |
| DEBORAH NELSON | } | |
| Plaintiff(s), | } | |
| v. | } | |
| | } | |
| NATIONSTAR MORTGAGE LLC | } | |
| (DBA) MR. COOPER | } | |
| Defendant(s). | } | |

### MEMORANDUM OPINION REGARDING THIRD AMENDED COMPLAINT

This Adversary Proceeding is before the Court upon the Third Amendment to Plaintiffs'

Complaint Objecting to Claim No. 17 and all Amendments to that Claim (hereinafter "Third

Amended Complaint"). [1]  Although Russell Nelson and Deborah Nelson (hereinafter the

"Plaintiffs") are represented by competent legal counsel in their underlying Chapter 13 bankruptcy

case, the Plaintiffs elected to file this Adversary Proceeding *pro se,* objecting to the proof of claim

filed by Nationstar Mortgage, LLC (DBA) Mr. Cooper (hereinafter "Nationstar") without

assistance from or representation by any counsel.  Throughout this Adversary Proceeding, the

---

[1]     Third Amended Complaint, ECF No. 81. For clarity throughout this Opinion, the Court will refer to documents filed in the Adversary Proceeding by the following designation "ECF No. _" and to documents filed in the underlying case designated as "BK-ECF No. _".

Case 18-80037-CRJ    Doc 168    Filed 07/31/19    Entered 07/31/19 11:58:59    Desc Main
Document    Page 1 of 42

Court repeatedly cautioned the Plaintiffs regarding the difficulty with proceeding *pro se* in such a complex legal case and strongly encouraged the Plaintiffs to seek the assistance of legal counsel, but to no avail.

While the Plaintiffs are both highly educated and have committed an enormous amount of time and energy in researching the law and filing pleadings challenging Nationstar's proof of claim and asserting their legal position in this case, the Third Amended Complaint lacks clarity and contains a wide range of theoretical, technical allegations. The Third Amended Complaint encompasses thirty-seven pages and includes 155 number paragraphs, pursuant to which the Plaintiffs assert various disjointed claims under Alabama and federal law, including but not limited to, claims of fraud, misrepresentation, and violations of the Fair Debt Collection Practices Act (the "FDCPA").[2] According to a liberal reading of the Third Amended Complaint, the Plaintiffs apparently seek: (i) a declaratory judgment that the promissory note executed by the Plaintiffs with Southbank in 2007 (hereinafter the "Note") is no longer secured by their residence; (ii) an order voiding the claim filed by Nationstar; (iii) actual damages of $76,437; (iv) future damages of $295,000; (v) damages related to their postpetition Loan Modification Agreement with Nationstar; and (vi) punitive damages. These are the basic issues which the Plaintiffs attempted to prove by their evidence at the trial.

Commencing on February 13, 2019, the Court conducted a two-day, seventeen hour trial on the issues alleged in the Third Amended Complaint. Each of the parties was given a full day to present their evidence. On February 15, 2019, the Court entered an Order Requiring Post-Trial Briefs, directing the parties to specifically address how the documents, testimony and other

---

[2] *See Jackson v. Bank of America, N.A.*, 898 F.3d 1348 (11th Cir. 2018)(affirming dismissal of complaint as an abuse of process engineered to delay or prevent execution of a foreclosure judgment effectuated by filing a "multi-count, incomprehensible complaint that flouted the Federal Rules of Civil Procedure . . .").

2

evidence presented during the trial relates to each element of the Plaintiffs' various claims. On April 1, 2019, the parties timely submitted their respective Post-Trial Briefs. On April 2, 2019, Nationstar moved for leave to file an amended or corrected Post-Trial Brief.[3] Thereafter, the Court entered an Order Denying Motion for Leave to File Amended Post-Trial Memorandum. At that time the record in this case was closed. The Court then took this matter under advisement.

The Court has now carefully considered all of the exhibits offered into evidence, testimony given and other evidence presented at trial, the Post-Trial Briefs, and the applicable law, and based on all the facts and the law, finds that Nationstar, being in physical possession of the Plaintiffs' Note at trial, with an affixed endorsement in blank, is the holder of a negotiable instrument under the Alabama Uniform Commercial Code. Accordingly, Nationstar had standing to file a proof of claim in the Plaintiffs' bankruptcy case and to enforce the Note. The Court further finds that the Plaintiffs (i) failed to establish by competent evidence that Nationstar made any misrepresentations either pre-petition or during the post-petition loan modification process regarding Nationstar's ability to foreclose, (ii) failed to establish that Nationstar's proof of claim is materially defective, and (iii) failed to establish that their Loan Modification Agreement is unenforceable.[4] The relief requested in the Third Amended Complaint is therefore denied.

## PROCEDURAL HISTORY

1. The Plaintiffs' allegations challenging the claim filed by Nationstar first came before the Court when the Plaintiffs, also without the assistance of their bankruptcy counsel, filed an Objection to

---

[3] Motion for Leave to File Amended Post-Trial Brief, ECF No. 161.

[4] The Court makes the findings of fact and conclusions of law contained herein pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure. To the extent any of the Court's findings of fact constitute conclusions of law they are adopted as such, and to the extent any of the Court's conclusions of law constitute findings of fact they are adopted as such.

3

Nationstar's Mortgage Payment Change, challenging Nationstar's escrow analysis ("Objection to Payment Change").[5] After holding an extensive Evidentiary Hearing on the Objection to Payment Change on January 25, 2018, the Court determined that Nationstar accurately calculated the payment change.[6]

2. On January 22, 2018, prior to the scheduled Evidentiary Hearing on the Objection to Payment Change, the Plaintiffs filed an Objection to Proof of Claim #17.[7] During a Status Conference on the Objection to Proof of Claim #17, as subsequently amended, the Plaintiffs orally moved to withdraw their objection and stated their intention to proceed, instead, with this Adversary Proceeding.[8] Following the Status Conference, the Court entered an Order requiring the Plaintiffs to file an Amended Complaint setting forth a clear statement of their claims and a concise statement of the relief sought.[9]

3. On April 10, 2018, the Plaintiffs filed an Amended Complaint, asserting numerous claims, including fraud by duress and fraud in the inducement.[10] On June 20, 2018, the Adversary Proceeding came before the Court for Status Conference and on Nationstar's Motion to Dismiss Amended Complaint.[11] Following the hearing, the Court entered an Order requiring the Plaintiffs again to amend their Complaint to state with specificity any and all facts supporting their allegations of fraud.[12]

4. On July 20, 2018, the Plaintiffs filed a Second Amended Complaint, totaling thirty-seven pages

---

[5]       Objection to Nationstar's Mortgage Payment Change, BK-ECF No. 50.
[6]       Order on Notice of Mortgage Payment Change, BK-ECF No. 131.
[7]       Objection to Claim #17, BK-ECF No. 119.
[8]       Objection to Nationstar's Proof of Claim and Renewed Objection to Proof of Claim #17 to Clarify Their Request for an Adversary Proceeding, ECF No. 1.
[9]       Order Setting Deadlines to File Amended Complaint and Scheduling Status Conference, ECF No. 3.
[10]      Amended Request for Adversarial Proceeding and Objection to Claim #17 Including All Amendments, ECF No. 7.
[11]      Motion to Dismiss and Answer to Amended Request for Adversarial Proceeding and Objection to Claim #17 Including All Amendments, ECF No. 13; Objection to Motion to Dismiss, ECF No. 20.
[12]      Order Rescheduling Hearing, ECF No. 24.

4

with 180 numbered paragraphs, in which Plaintiffs challenged Nationstar's servicing of their mortgage and standing to enforce their Note.[13] During a Status Conference held on August 14, 2018, the Court provided both parties with a summary in which the Court listed the primary issues asserted in the Second Amended Complaint, as follows: (i) standing; (ii) potential Bankruptcy Code violations; (iii) fraud; and (iv) damages.[14] Following the Status Conference, the Court attempted to simplify the trial by hearing the issues in separate phases. The Court then entered an Order scheduling an Evidentiary Hearing first on the limited issue of standing to file the Proof of Claim.[15]

5. On October 15, 2018, this Adversary Proceeding came before the Court on the Plaintiffs' Motion to Continue Evidentiary Hearing to address various discovery issues. At the hearing, it became apparent that the issues raised by the Plaintiffs are interrelated and should not be separated into separate evidentiary hearings. Following the hearing, the Court entered an Order: (1) Vacating Evidentiary Hearing; (2) Requiring Settlement Conference Regarding Discovery Disputes; and (3) Scheduling Status Conference.[16]

6. On October 25, 2018, the Court issued a Comprehensive Scheduling, Pre-Trial, and Trial Order, scheduling all issues in this Adversary Proceeding for trial and establishing various deadlines, including a 30-day deadline to file amended pleadings with leave of Court.[17] Without seeking leave of Court, on November 26, 2018, the Plaintiffs filed a Third Amended Complaint after the deadline for seeking leave to amend expired.[18] Following a hearing on Order to Show Cause Why

---

[13]     Second Amendment to Plaintiffs' Complaint Objecting to Claim No. 17 and All Amendments to that Claim, ECF No. 26.
[14]     Report Summarizing Issues in Second Amended Complaint, ECF No. 39.
[15]     Order Scheduling Evidentiary Hearing on the Validity and Enforceability of Nationstar Mortgage, LLC's Proof of Claim, ECF No. 40.
[16]     ECF No. 68.
[17]     Scheduling Order, ECF No. 71.
[18]     Third Amended Complaint, ECF No. 81.

5

Third Amendment to Complaint Should not be Disallowed, the Court entered an Order striking paragraphs 142, 151, and 152, but otherwise allowing the Plaintiffs to proceed with the Third Amended Complaint.[19]

## FINDINGS OF FACT[20]

### A. *The Note and Mortgage*

On March 30, 2007, the Plaintiffs refinanced the existing mortgage on their residence located at 120 Dublin Circle, Madison, Alabama (hereinafter the "Property") by signing a promissory note, executed on a Multistate Fixed Rate Note – Single Family Fannie Mae/Freddie Mac Uniform Instrument Form in favor of Southbank in the principal amount of $240,000, with 5.875% interest and initial monthly payments of $1,419.69.[21]   In relevant part, the Note includes the following provisions:

> I understand that the Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."
>
> . . . .
>
> If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount.   That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.
>
> . . . .

---

[19]     Order Vacating Order to Show Cause Why Third Amendment to Complaint Should not be Disallowed, ECF No. 102.

[20]     On February 7, 2019, the parties filed a Pre-Trial Statement pursuant to which the parties stipulated to numerous facts (hereinafter "Joint Stipulation of Facts"), ECF No. 150.   The following Findings of Fact will include portions of the Joint Stipulations of Facts, as noted accordingly.

[21]     Note, Defendant's Ex. 13.

The Note Holder may enforce its rights under this Note against each person individually or against all . . . together.[22]

To secure the Note, the Plaintiffs executed a mortgage on March 30, 2007 in favor of Southbank (hereinafter the "Mortgage").[23] On April 6, 2007, Southbank recorded the Mortgage in the Office of the Judge of Probate of Madison County, Alabama, Instrument No. 20070406000245720.[24] The Mortgage provides, in part, as follows:

(B) "Borrower" is DEBORAH J NELSON AND RUSSELL A. NELSON, WIFE AND HUSBAND

Borrower is the mortgagor under this Security Instrument.
(C) "MERS" is Mortgage Electronic Registration Systems, Inc.   MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the mortgagee under this Security Instrument**.
. . .

(D) "Lender" is SOUTHBANK

. . . .

TRANSER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and Note. For this purpose, Borrower irrevocably mortgages, grants and conveys to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with power of sale, the following described property . . . .[25]

The Plaintiffs both testified at trial that they did not understand: (i) that MERS was involved in any manner with their mortgage loan, (ii) that MERS secured any rights in the Mortgage and Note,

---

[22]     *Id.*
[23]     Mortgage, Plaintiffs' Ex. 41G. The Plaintiffs' Exhibits offered at trial are contained in one binder, with the first fifty exhibits tabbed 1-50 on white exhibit tabs and the second set of exhibits tabbed 1-50 on green exhibit tabs. The Court will refer to any Exhibits marked with green tabs as "Plaintiffs' Ex. _G" throughout this opinion.   All other references will be to the first set of Exhibits marked with white tabs.
[24]     Joint Stipulation of Facts, ECF No. 150, ¶ 4.
[25]     Mortgage, Plaintiffs' Ex. 41G (emphasis in original).

7

nor (iii) that they were giving MERS any beneficial interest in the Property. Nevertheless, the Mortgage clearly identifies MERS in bold print as the mortgagee. The plain language of the Mortgage speaks for itself, despite the Plaintiffs' alleged understanding or lack thereof.

The Note has been transferred three times, as follows: (i) Alecia Page, Vice President of Southbank, endorsed the Note to Countrywide Bank FSB; (ii) Laurie Meder, Senior Vice President of Countrywide Bank, FSB, endorsed the Note to Countrywide Home Loans, Inc.; and (iii) Michele Sjolander, Executive Vice President of Countrywide Home Loans, Inc., endorsed the Note in blank.[26] The Plaintiffs challenge Nationstar's standing to file its proof of claim, in part, because the endorsements on the Note are undated and because they allege that there is not a clear chain of endorsements or a closed endorsement to Freddie Mac. The Plaintiffs further argue that Nationstar provided no evidence that the undated rubber stamp endorsements were placed on the Note by the individuals or organizations which they purport to represent, nor that the rubbers stamps were placed on the Note before the Plaintiffs filed their petition.

Aaryn Richardson (hereinafter "Richardson"), a Senior Assistant Secretary of Litigation Support and Resolution Analyst with Nationstar, testified for the Defendant based upon his review of the pleadings and knowledge of Nationstar's business records maintained in the ordinary course of business. Richardson testified that Freddie Mac has owned the Note since April 24, 2007; that Nationstar services the loan; and that Nationstar, either directly or through its document custodian, has maintained possession of the Note since April 3, 2013.[27]

Richardson explained during his testimony that Freddie Mac requires a promissory note to be endorsed in blank before Freddie Mac purchases a loan. Shortly after the Plaintiffs' loan

---

[26]     Note, Defendant's Ex. 13; *See also* History of Ownership and Servicing Rights for the Nelson Loan, Defendant's Ex. 22.
[27]     *See* Files Tracking History Report, Defendant's Ex. 29.

originated in March of 2007, Richardson testified that Countrywide purchased the Note as reflected on an undated Countrywide Loan Purchase Voucher (hereinafter "Voucher") and Countrywide Regular Funding Conventional Loan Stacking Sheet.[28] The Voucher includes a description of the Plaintiffs' loan, including Southbank's loan number, the loan amount, and Mrs. Nelson's name.[29] Both documents are maintained by Nationstar in the ordinary course of business as part of the Plaintiffs' loan collateral file.

During the trial, while on the witness stand, Richardson was in physical possession of Nationstar's collateral file for the Plaintiffs' loan, including the "original" or "wet ink" Note, printed on standard-sized paper measuring 8.5 inches by 11 inches. Richardson explained that Nationstar's Tracking History Report reflects that the document custodian, Recon Trust Company NA, maintains the collateral file for the Plaintiffs' loan, including the Note and Mortgage.[30] Richardson stated that he is familiar with Nationstar's policies and procedures for storing loan documents. Richardson confirmed that Nationstar's Tracking History Report reflects that Nationstar, either directly or through the document custodian, has been in possession of the Note since April of 2013.[31] While the Plaintiffs argue that "it is just as easy to assume" that the document custodian is holding the Note for an entity other than Nationstar, in support of their assumptions the Plaintiffs offered no evidence contrary to Richardson's specific testimony that the document custodian is holding the Note for Nationstar.[32]

Although Richardson was in physical possession of the original Note at trial, the Plaintiffs challenged the authenticity of the Note, arguing that the Note which they signed was printed on

---

[28]     Countrywide Loan Voucher, Defendant's Ex. 23; Countrywide Regular Funding Conventional Loan Stacking Sheet, Defendant's Ex. 87.
[29]     *Id.*
[30]     Files Tracking Report, Defendant's Ex. 29.
[31]     *Id.*
[32]     Plaintiff Post-Trial Brief, ECF No. 159.

9

legal-sized paper. The Plaintiffs offered into evidence photocopies of the documents which they received during their 2007 loan closing, copied on legal-sized paper.[33]  Accordingly, the Plaintiffs dispute that the Note produced by the Defendant at trial, is the original Note which they signed. The primary difference between the original Note and Mortgage, and the photocopies upon which the Plaintiffs rely is that the photocopies have a blank four-inch margin at the top of each page.[34]

The Plaintiffs challenged the authenticity of their signatures on the Note produced by Nationstar.  In response to that challenge, Nationstar called to testify Grant Sperry (hereinafter "Sperry"), a Forensic Document Examiner, regarding whether the Plaintiffs' signatures on the Note are authentic. After extensive voir dire by the Plaintiffs, the Court overruled the Plaintiffs' objection to Sperry as an expert witness, finding that he was unquestionably qualified to testify as an expert witness under Rule 702 of the Federal Rules of Evidence given his knowledge, skill, and training. Sperry has more than forty years of experience. He began his career with the United States Army Crime Laboratory in Georgia where he was certified by the Department of the Army and the United States Army of Criminal Investigation Command as a Forensic Document Examiner. Sperry has received extensive training over the years from numerous federal and state agencies, including the FBI, the CIA, the Secret Service, the Bureau of Engraving and Printing, the Immigration and Naturalization Service, the Georgia Bureau of Investigation, and the Royal Canadian Mounted Police.  Sperry is Board Certified by the American Board of Forensic Document Examiners and has testified in legal proceedings more than 350 times as an expert witness.

---

[33]     Plaintiffs' Ex. 40G and 41G.
[34]     *Id.*

Sperry testified that he examined and compared the signatures on the Note to a series of the Plaintiffs' known signatures on other documents, examining between twelve and fifteen signatures for each Plaintiff. Sperry first examined the signatures in question on the Note to determine whether the signatures contained sufficient value or characteristics suitable for identification, looking specifically for evidence of any hesitation or stops in the signatures, which were not present in either signature on the Note. The second step, Sperry explained, is focused on the Plaintiffs' known handwriting on other documents to determine habits and variations in their known signatures. Sperry explained that a number of cumulative habits make handwriting identifiable, including variations in fluidity, slant, terminal and introductory strokes, and pressure habits. After excluding any handwritings which appeared questionable, Sperry compared the known accepted signatures of the Plaintiffs to the signatures on the Note, looking for evidence of a different author.

After careful and extensive examination, Sperry stated his expert opinion that the Note was signed by both Plaintiffs. With respect to Deborah Nelson's signature on the Note compared to her known signatures, Sperry found that the features and characteristics depicted within the known handwritings revealed similarities including, "letter formations, base line habit, height relationships, word and letter spacing, fluency, absolute and relative slant, terminal and introductory strokes, and idiosyncratic features."[35]  With respect to Russell Nelson's signature on the Note compared to his known signatures, Sperry concluded that the similarities included "fluency, absolute and relative slant, terminal and introductory strokes, and idiosyncratic features."[36]  Sperry opined that there are no significant differences between the known signatures

---

[35]  Forensic Laboratory Report, Defendant's Ex. 16.
[36]  *Id.*

and the signatures on the Note for either Plaintiff and further found no evidence of forgery with respect to either signature. Based on the uncontroverted evidence at trial, the Court finds that the Note contains the signatures of both the Plaintiffs.

## B. Transfer of Servicing Rights

Beginning in April of 2007, the Plaintiffs' Mortgage was serviced by Countrywide Home Loans (hereinafter "Countrywide"). [37] Richardson testified that Countrywide retained the servicing rights for the Plaintiffs' loan until January 11, 2008 when Countrywide was acquired by Bank of America. The Plaintiffs made payments to Countrywide until they received notice that Bank of America would begin servicing their loan.[38]

On January 6, 2013, Freddie Mac, Bank of America, and Nationstar executed a document entitled "Servicing Transfer Agreement" pursuant to which Bank of America transferred, with Freddie Mac's consent, Bank of America's servicing rights to Nationstar.[39] Richardson testified that Bank of America transferred the loan servicing rights to Nationstar as part of a financial transaction known as "Mosaic." Richardson reviewed a magnetic file related to Mosaic and verified that the Plaintiffs' loan was one of approximately 60,000 loans included in the Mosaic transaction. [40] Richardson also confirmed that a one-page Excel spreadsheet identified the Plaintiffs' loan as one of the 60,000 loans included in the Mosaic transaction and verified that Bank of America's loan number corresponded with Nationstar's loan number for the Plaintiffs' loan. [41]

---

[37]    Joint Stipulation of Facts, ECF No. 150, ¶ 5.
[38]    *Id.* at ¶ 8.
[39]    Servicing Transfer Agreement, Defendant's Ex. 24.
[40]    Mosaic Excel Spreadsheet, Defendant's Ex. 26.
[41]    Mosaic Excel Spreadsheet, Defendant's Ex. 26.

12

By letter dated February 25, 2013, Bank of America notified the Plaintiffs that servicing of their loan was being transferred to Nationstar, stating as follows: "We are writing to inform you that beginning March 16, 2013, we will transfer the servicing of your loan noted above to Nationstar Mortgage, LLC. As your new servicer, Nationstar Mortgage LLC will handle your loan servicing, including billing, payment processing, and customer support."[42] Attached to the letter is a Notice of Assignment, Sale or Transfer of Servicing Rights, notifying the Plaintiffs that regarding the servicing of their loan, "that is the right to collect payments from you, will be assigned, sold or transferred from Bank of America, N.A. to Nationstar Mortgage, LLC. . . ."[43]

In April of 2013, the Plaintiffs began making monthly payments in the amount of $1,666.76 to Nationstar, consisting of $1,419.69 for principal and interest, and $247.07 for escrow.[44] Between April of 2013 and December 15, 2015, the Plaintiffs made at least twenty-five mortgage payments to Nationstar.[45]

## C. Pre-Petition Default and Other Events Leading to Bankruptcy

The Plaintiffs contend that they were forced to seek bankruptcy relief because Nationstar improperly threatened in multiple letters that it would foreclose their Mortgage. For example, by letter to the Plaintiffs dated April 11, 2015, Nationstar stated as follows:

> Nationstar Mortgage, the servicer of your loan, welcomes the opportunity to discuss possible alternatives that may be available to you. Your mortgage payment is now 30 days or more past due and as our prior letters have stated, we are here to help you. . . . . If you need help, the following options may be possible (most are subject to lender approval):
>
> - Refinance the loan with us or another lender;

---

[42]    Bank of America letter dated February 25, 2013, Plaintiffs' Ex. 49.
[43]    *Id.*
[44]    Joint Stipulation of Facts, ECF No. 150, ¶ 11.
[45]    *Id.* at ¶ 12.

13

- Modify the loan terms with us;
- Payment forbearance temporarily gives you more time to pay your monthly payment; or
- If you are not able to continue paying your mortgage, your best option may be to find more affordable housing.   As an alternative to foreclosure, you may be able to sell your home and use the proceeds to pay off your current loan.[46]

A letter from Nationstar to the Plaintiffs dated May 11, 2015, included this language:

Failure to bring your loan current may result in fees, possibly even foreclosure and the loss of your home. We are here to help. You do have options. Here are some of the solutions that might be available, depending on your situation:

- Modifying the terms of your current loan.
- Receiving a payment forbearance . . . .
- If you simply can't pay your mortgage, an alternative to foreclosure may be selling your home and using the proceeds to pay off your current loan.   A short payoff may be acceptable, or a deed in lieu of foreclosure may be an option.[47]

Thereafter, Nationstar sent a letter to the Plaintiffs dated August 22, 2015 which stated: "Your account with Nationstar Mortgage LLC f/k/a Centex Home Equity Company, LLC ("Nationstar Mortgage") is significantly delinquent. In the event that you fail to cure this delinquency, Nationstar Mortgage LLC intends to enforce the provisions of your Note and Security Instrument (Mortgage or Deed of Trust), which may result in your loss of property subject to the Security Instrument."[48]

Russell Nelson testified that the language in these letters, as well as others admitted into evidence at trial, placed so much pressure upon his wife that she believed that they had no choice but to seek bankruptcy relief. The evidence at trial revealed, however, that there are other financial reasons that lead to the Plaintiffs seeking bankruptcy relief.

---

[46] Nationstar letter dated April 11, 2015, Plaintiffs' Ex. 2.
[47] Nationstar letter dated May 11, 2015, Plaintiffs' Ex. 3.
[48] Nationstar letter dated August 22, 2015, Plaintiffs' Ex. 4.

14

Although he lost his primary source of income earning $60,000 per year after being laid off in August of 2012 from SAIC, Mr. Nelson explained that he did not share his wife's desire to file bankruptcy because the Plaintiffs have always survived on additional income Mr. Nelson earns as a freelance writer. In addition to his annual salary, Mr. Nelson earned approximately $200,000 as a freelance writer between 2005 and 2012, averaging $30,000 per year. After he lost his job, the Plaintiffs juggled their bills while living on savings, unemployment income, and advances earned by Mr. Nelson freelance writing. The Plaintiffs were accustomed, however, to living "feast to famine" as Mr. Nelson explained that such is the life of a writer.

Unfortunately, between 2012 and 2015, Mr. Nelson further explained that he was not able to earn as much income freelance writing as he had between 2005 and 2012 because the Plaintiffs' disabled, adult son suffered continuing medical emergencies which limited his ability to write. Although Mr. Nelson has remained unemployed since 2012 and the condition of the Plaintiffs' son has stabilized, Mr. Nelson testified that he now has even less time to work as a freelance writer because of the extensive time the Plaintiffs have chosen to devote *pro se* to litigating with Nationstar.

### D. The Petition

On December 15, 2015, the Plaintiffs sought relief under Chapter 13 of the Bankruptcy Code. As alleged by the Plaintiffs, on the petition date, neither Nationstar nor Freddie Mac had a publicly recorded assignment of the Mortgage.[49] Prior to filing for relief, the Plaintiffs failed to pay their mortgage payments to Nationstar for the months of September, October, November, and

---

[49]      Joint Stipulation of Facts, ECF No. 150, ¶ 22-23.

15

December of 2015.[50] Accordingly, the Plaintiffs scheduled Nationstar as a secured creditor on Schedule D: Creditors Who Have Claims Secured by Property (hereinafter "Schedule D").[51] In the bankruptcy schedules filed in their Chapter 13 case, the Plaintiffs did not schedule the mortgage debt as either contingent, unliquidated, nor disputed.[52]

The Plaintiffs proposed in their Chapter 13 Plan to make regular post-petition mortgage payments directly to Nationstar beginning January of 2016, and listed $6,940 in arrearage owed to Nationstar, to be paid by the Chapter 13 Trustee.[53] Likewise, the Plaintiffs' Amended Chapter 13 Plan (hereinafter the "Amended Plan") filed on February 19, 2016 provided that the Plaintiffs would make regular post-petition mortgage payments directly to Nationstar and listed $6,940 in arrearage owed to Nationstar.[54] On February 24, 2016, the Court entered an Order confirming the Amended Plan.[55]

The Plaintiffs also listed BancorpSouth as a secured creditor on Schedule D, secured by a second mortgage against the Property in the amount of $63,712.93.[56] On the petition date, the Plaintiffs' second mortgage with BancorpSouth was delinquent in the amount of $883.63.[57] The Plaintiffs' Amended Plan, as confirmed, provides for interest only payments on the second mortgage. BancorpSouth has twice sought relief from the stay to enforce its rights under state law against the Property because the second mortgage has matured during the pendency of the Plaintiffs' Chapter 13 case.[58]

---

[50] *Id.* at ¶ 18.
[51] Schedule D: Creditors Who have Claims Secured by Property, Defendant's Ex. 35.
[52] *Id.*
[53] Chapter 13 Plan, Defendant's Ex. 32.
[54] Amended Chapter 13 Plan, Defendant's Ex 33.
[55] Joint Stipulation of Facts, ECF No. 150, ¶ 36.
[56] Schedule D: Creditors Who have Claims Secured by Property, Defendant's Ex. 35.
[57] Chapter 13 Plan, Defendant's Ex. 32.
[58] *See* Orders Denying Motions to Lift Stay, Defendant's Ex. 95.

16

On Schedules E/F: Creditors Who Have Unsecured Claims, the Plaintiffs also scheduled in excess of $102,000 in unsecured credit card debt owed on numerous credit cards held by the Plaintiffs. One of the credit card companies, Discover Bank, filed a civil action against Deborah Nelson in the Circuit Court of Madison County, Alabama before the Plaintiffs sought bankruptcy relief. The Plaintiffs' moved to dismiss the civil action in state court just days after they sought bankruptcy relief.[59] Although Mrs. Nelson testified that she did not seek bankruptcy relief, even in part, to stay the pending litigation, her testimony was not credible because of the large amount of unsecured credit card debt which the Plaintiffs unquestionably owe.

### E. *The Loan Modification*

On February 19, 2016, the Plaintiffs executed a Loan Modification Agreement with Nationstar while represented by competent legal counsel who submitted the Loan Modification Agreement to the Court for approval after notice and a hearing.[60] At trial, Mrs. Nelson confirmed that she had reviewed the Loan Modification Agreement prior to executing the document.

Nationstar implemented the loan modification in stages, first approving a trial payment period. By letter dated January 22, 2016, Nationstar explained that the Plaintiffs' eligibility to participate in the trial loan modification process had been evaluated based upon the "eligibility requirements of Freddie Mac, the owner/guarantor/trustee of your clients mortgage loan."[61] As of January 22, 2016, neither Nationstar nor any other entity had a recorded assignment of the Mortgage.[62]

---

[59] Motion to Dismiss Defendant's Ex. 81.
[60] Defendant's Ex 59.
[61] Nationstar letter dated January 22, 2016, Plaintiffs' Ex. 21.
[62] Joint Stipulation of Facts, ECF No. 150, ¶ 40-43.

17

On March 22, 2016, the Plaintiffs' bankruptcy counsel filed a Motion to Authorize Home Mortgage Loan Modification with Nationstar Mortgage, seeking authority to enter into the Loan Modification Agreement.[63] Such Agreement would add the Plaintiffs' mortgage arrearage into the modified mortgage total amount and lower their mortgage payment from $1,952, with an interest rate of 5.8%, to $1,086.19 per month with an interest rate of 2.37% for the first five years. Thereafter, the Agreement provides for a monthly payment of $1,169.37 with an interest rate of 3.375% for year six and a monthly payment of $1,199.67 with an interest rate of 3.75% for the remainder of the term.[64] The Motion to Authorize Home Mortgage Loan Modification with Nationstar Mortgage states that "[t]he Debtors believe that the loan modification agreement is in their best interest and would request this Court grant authorization for them to enter into the loan modification agreement on the home mortgage."[65] On May 13, 2016, the Court entered an Order approving the loan modification and disallowing the balance of Nationstar's arrearage claim.[66] The terms of the loan modification clearly benefitted the Plaintiffs while they paid their mortgage during the Chapter 13 case. It is undisputed that the Plaintiffs have paid at least $10,000 less in principal and interest to Nationstar as the result of the beneficial terms of the loan modification.

### F. Nationstar's Proof of Claim

On April 11, 2016, prior to the approval of the loan modification, Nationstar timely filed its original proof of claim (hereinafter the "Claim"), as a secured claim in the amount of $213,310.31, with an interest rate of 5.875%.[67] Nationstar listed $7,222.77 as the amount

---

[63] Motion to Authorize Home Mortgage Loan Modifications with Nationstar Mortgage, ECF No. 26.
[64] *Id.*
[65] *Id.*
[66] Order on Debtors' Motion to Approve Loan Modification, ECF No. 37.
[67] Nationstar Proof of Claim, Defendant's Ex. 39.

necessary to cure the mortgage arrearage as of the petition date. The Claim included an escrow shortage of $1,338.93 and reflected an escrow account balance of -$205.08 as of the petition date.[68] Part 4 of Form 410A reflected that the Plaintiffs' monthly mortgage payment would be $1,698.02, effective January 1, 2016.[69]

Nationstar did not specifically state on the Claim that it was acting as an agent of Freddie Mac.[70] However, on part 9 of the Proof of Claim, Nationstar disclosed that it services the Plaintiffs' loan and holds the Note, stating:

> Nationstar Mortgage services the loan on the property referenced in this proof of claim. In the event the automatic stay in this case is modified, this case dismisses, and/or the debtor obtains a discharge and a foreclosure action is commenced on the mortgaged property, the foreclosure will be conducted in the name of "Nationstar Mortgage LLC".

> Noteholder directly or through an agent, has possession of the promissory note. The promissory note is either made payable to Noteholder or has been duly endorsed. Noteholder is the original mortgagee, or beneficiary, or the assignee of the security instrument for the referenced loan.[71]

Nationstar attached the following documents to the Claim it filed: (1) the Official Form 410-A Mortgage Proof of Claim Attachment; (2) a copy of the Note and recorded Mortgage; (3) a copy of the Loan Modification Agreement dated February 19, 2016; (4) a copy of a Corporate Assignment of Mortgage dated April 1, 2016, pursuant to which MERS, as nominee for Southbank assigned the Mortgage to Nationstar; and (5) an Annual Escrow Account Disclosure Statement dated December 17, 2015 which reflected that the "Total Shortage at Filing Date" was $1,544.01.[72]

---

[68]    Joint Stipulation of Facts, ECF No. 150, ¶ 61.
[69]    *Id.* at ¶ 62.
[70]    *Id.* at ¶ 63.
[71]    Nationstar Proof of Claim, Defendant's Ex. 39.
[72]    Nationstar Proof of Claim, Defendant's Ex. 39; *see also* Joint Stipulation of Facts, ECF No. 150, ¶ 71-72.

Nationstar recorded the Corporate Assignment of Mortgage on April 14, 2016 in Madison County, Alabama, the county in which the Property is located.[73]

On November 30, 2016, Nationstar filed an Amended Proof of Claim (hereinafter the "Amended Claim").[74] The Amended Claim reduced the mortgage arrearage owed to zero in conformity with the Loan Modification Agreement approved by this Court.[75] Neither the Plaintiffs' bankruptcy counsel nor the Chapter 13 Trustee filed an objection to either the Claim or to the Amended Claim. The only objection was by the Plaintiffs *pro se*.

Nationstar's witness, Richardson, testified regarding Nationstar's policies and procedures for preparing and filing a proof of claim.[76] Richardson explained that Nationstar's obligations are governed by Freddie Mac's Single-Family Seller/Servicer Guide (the "Servicer Guide") pursuant to which Nationstar is required to file a proof of claim upon receipt of notice that a borrower has filed bankruptcy and is also authorized to enter into a loan modification agreement on behalf of Freddie Mac.[77] Prior to filing a proof of claim with respect to a mortgage registered on the MERS System, Freddie Mac requires the loan servicer to "prepare and execute . . . . an assignment of the Security Instrument from MERS to the Servicer.[78] The assignment was filed pursuant to the terms of the Servicer Guide.

Richardson also testified regarding Nationstar's calculation of each of the numbers included on the Claim, including the principal balance owed, the amount of interest due, and how Nationstar calculated the escrow deficiency and monthly payment. In its Mortgage Proof of

---

[73]     Madison County Recording Page, Plaintiffs' Ex. 1.
[74]     Joint Stipulation of Facts, ECF No. 150, ¶ 73; Plaintiffs' Ex. 40.
[75]     Nationstar Amended Proof of Claim, Plaintiffs' Ex. 40.
[76]     Before the Plaintiffs filed for bankruptcy relief, Freddie Mac executed a Limited Power of Attorney, appointing Nationstar as its Attorney-in-Fact, *see* Limited Power of Attorney, Defendant's Ex. 27.
[77]     Single-Family Seller/Servicer Guide, Defendant's Ex. 30.
[78]     *Id.*

20

Claim Attachment, Nationstar calculated the principal amount due as of the petition date as $213,310.31. The principal balance included interest in the amount of $4,586.92 and an escrow deficiency for funds advanced in the amount of $205.08. Prepetition arrearage totaled $7,222.77, including a projected escrow shortage of $1,338.93. Richard explained that the escrow account was negative because the Plaintiffs' loan was delinquent on the petition date. Richardson further testified that Nationstar calculated the amount of interest due by multiplying the principal balance by the interest rate from August 1, 2015 through the petition date. The Plaintiffs failed to offer any credible evidence to refute the numbers contained in either the Claim or Amended Claim.

## CONCLUSIONS OF LAW

The Plaintiffs generally assert that: (i) Nationstar does not have standing to file a proof of claim in this case; (ii) Nationstar's Claim and Amended Claim are materially defective; (iii) Nationstar falsely misrepresented in multiple letters that it had the ability to foreclose and fraudulently suppressed material facts concerning its standing to enforce the Note; and (iv) the Loan Modification Agreement is unenforceable. The Plaintiffs' various allegations of fraud and deceit stem primarily from their belief that Nationstar failed to prove that Freddie Mac owns the Note and also failed to prove that Nationstar held the Note on the petition date. Nationstar counters that Freddie Mac has owned the loan since 2007; that Nationstar services the loan on behalf of Freddie Mac; and that Nationstar has been in possession of the Note, endorsed in blank, since 2013.

After reviewing the factual evidence and applicable law, the Court reaches the following conclusions of law:

Case 18-80037-CRJ    Doc 168    Filed 07/31/19    Entered 07/31/19 11:58:59    Desc Main
Document    Page 21 of 42

*I.*     ***Authenticity***

The Plaintiffs challenge the authenticity of the Note produced at trial by Nationstar. Nationstar's witness, Richardson, was in possession of the Note, printed on 8.5 inch by 11 inch paper.   In support of their argument that the Note produced by Nationstar is not authentic, the Plaintiffs offered into evidence photocopies of the Note and Mortgage which they received during their 2007 loan closing with Southbank. The Plaintiffs' copies of both the Note and Mortgage have a blank four-inch margin at the top of each page.[79]

Based upon the Court's own examination of the Plaintiffs' copy of the Note, the "wet ink" Note produced at trial, and the copy of the Note offered into evidence by Nationstar and attached to its proof of claim, the Court finds that any differences between the documents are superficial and easily explained.[80]   The Plaintiffs' document was clearly printed or typed on standard-sized paper and simply photocopied onto legal-sized paper which explains the blank four-inch margin at the top of each page of the documents offered by the Plaintiffs.   The original Note had no such four-inch margin at the top.   In addition to Richardson's testimony regarding Nationstar's Tracking History Report which reflects that Nationstar has been in possession of the Note, either directly or through a document custodian since April of 2013, Nationstar's Forensic Document Examiner Sperry also testified that the original Note produced by Nationstar at trial contains the Plaintiffs' authentic signatures and was consistent with its purported age.

The Court finds that the Plaintiffs failed to offer any evidence at trial beyond their own self-serving testimony that their signatures were forgeries. The Court finds Sperry, Nationstar's expert Forensic Document Examiner, to be credible and thus relies upon his testimony.   After

---

[79]     *See* Plaintiffs' Ex. 40G and Ex. 41G.
[80]     *See* Plaintiffs' Ex. 40G and Ex. 41G and Defendant's Ex. 13.

examining the signatures contained on the Note compared to the known signatures of both Plaintiffs, Sperry concluded that the Note was signed by both the Plaintiffs. The Plaintiffs produced no evidence of significant differences between the known signatures and the signatures on the Note for either Plaintiff, and no evidence of forgery with respect to either signature to rebut the Forensic Document Examiner's testimony.

The Plaintiffs attempt to discredit the Forensic Document Examiner Sperry's opinion based on the size and color of the paper compared to the age of the Note was not credible and was unsuccessful. The Plaintiffs also attempted to challenge the endorsements or rubber stamps on the Note, but failed to present any evidence in support of their allegations.[81] As explained by the Eleventh Circuit, a court may rely on a document despite "naked assertions" of forgery which are unsupported by specific factual allegations.[82] Accordingly, the Court finds that the Plaintiffs failed to produce any credible evidence that the Note produced at trial by Nationstar is not the original "wet ink" Note executed in March of 2007 by the Plaintiffs.

## II.    *Evidentiary Effect of Nationstar's Proof of Claim*

Under the Bankruptcy Code, "[a] claim or interest, proof of which is filed under section 501 . . . is deemed allowed, unless a party in interest . . . objects."[83] If an objection is filed based upon enforceability, the Court shall determine the amount of such claim as of the petition date and shall allow such claim except to the extent "such claim is unenforceable against the debtor and property of the debtor under any agreement or applicable law for a reason other than because such

---

[81]     *See Congress v. U.S. Bank, N.A.,* 98 So. 3d 1165, 1168 (Ala. Civ. App. 2012)(explaining that signatures on a note are "'presumed to be authentic and authorized' under the Uniform Commercial Code . . . Ala. Code 1975 § 7-3-308(a)").

[82]     *Graveling v. Castle Mortg. Co.,* 631 Fed. Appx. 690, 693 (11th Cir. 2015).

[83]     11 U.S.C. § 502(a).

claim is contingent or unmatured."[84]

In addition to the Bankruptcy Code, "Rule 3001(a) specifies that a proof of claim must 'conform substantially to the appropriate Official Form.'"[85] Official Form 410, the current official proof of claim form, "requires the claimant to disclose, among other information, the amount of and basis for its claim."[86] "[W]hen a claim is based on a writing, the claimant must also file with its proof of claim a copy of the writing giving rise to the debt."[87]

Pursuant to the Bankruptcy Rules, in a case in which the debtor is an individual and the claimant asserts a security interest in the debtor's principal residence, the claimant must also file with its proof of claim the following documentation: (i) an itemized statement of the interest, fees, expenses, or charges incurred before the petition was filed; (ii) a statement of the amount necessary to cure any default as of the petition date; (iii) a Mortgage Proof of Claim Attachment (Official Form 410-A); and (iv) any escrow account statement prepared as of the petition date in a form consistent with applicable nonbankruptcy law.[88] If a security interest in property of the debtor is claimed, the claimant must also attach evidence that the security interest is perfected.[89]

The evidentiary effect of a proof of claim is governed by Rule 3001(f) which provides that "[a] proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim."[90] As explained by the Eleventh Circuit in the case of *Walston v. PYOD, LLC*, when a party in interest files an objection, courts should utilize the following framework for evaluating the proof of claim:

When a proof of claim contains all the information required under Rule 3001, it

---

[84]     11 U.S.C. § 502(b)(1).
[85]     *Walston v. PYOD, LLC (In re Walston)*, 606 Fed. Appx. 543, 545 (11th Cir. 2015).
[86]     *Id.*
[87]     *Id.* at 545-46 (citing Fed. R. Bankr. P. 3001(c)(1)).
[88]     Fed. R. Bankr. P. 3001(c)(2)(A)-(C).
[89]     Fed. R. Bankr. P. 3001(d).
[90]     Fed. R. Bankr. P. 3001(f).

24

"constitute[s] prima facie evidence of the validity and amount of the claim." Fed. R. Bankr. P. 3001(f). The burden then shifts to the objecting party to "'come forward with enough substantiations to overcome the claimant's prima facie case.'" *Benjamin v. Diamond (In re Mobile Steel Co.),* 563 F.2d 692, 701 (5th Cir.1977) (quoting 3A *Collier on Bankruptcy* ¶ 63.06 (14th ed.1976)). If the objecting party overcomes the prima facie case, then the burden of proof falls to the party that would bear the burden outside of bankruptcy. *Raleigh v. Ill. Dep't of Revenue,* 530 U.S. 15, 20, 120 S.Ct. 1951, 147 L.Ed.2d 13 (2000); 9 *Collier on Bankruptcy* ¶ 3001.09[2] (16th ed.2015).[91]

The Eleventh Circuit rejected the debtor's legal argument in *Walston* that a proof of claim should be disallowed because the evidence submitted with the proof of claim would be deemed inadmissible under state-law hearsay rules, even though the proof of claim otherwise contained all required information under Rule 3001.[92] "[N]othing in Rule 3001 or other bankruptcy rules requires a claimant to reduce the evidence submitted with its proof of claim into a form that would be admissible under state law."[93] As the Eleventh Circuit explained, "[t]he Bankruptcy Code provides streamlined and summary procedures 'to secure a prompt and effectual administration and settlement of the estate' of a debtor."[94]

The Plaintiffs argue that Nationstar did not provide sufficient documents to verify its proof of claim, but fail to specify what documentation is missing or provide any credible evidence pursuant to Rule 3001.  It bears repeating that Nationstar attached the following appropriate documents to the Claim: (1) the Official Form 410-A Mortgage Proof of Claim Attachment; (2) a copy of the Note and the recorded Mortgage; (3) a copy of the Loan Modification Agreement dated February 19, 2016; (4) a copy of a Corporate Assignment of Mortgage dated April 1, 2016, pursuant to which MERS, as nominee for Southbank assigned the Mortgage to Nationstar; and (5)

---

[91]     *Walston v. PYOD, LLC (In re Walston)*, 606 Fed. Appx. 543, 545-46 (11th Cir. 2015).
[92]     *Id*.
[93]     *Id.* at 547.
[94]     *Id.*

an Annual Escrow Account Disclosure Statement.[95] Accordingly, Nationstar's Proof of Claim included all of the information required by Rule 3001 and constitutes prima facie evidence of the validity and amount of the claim pursuant to Rule 3001(f). Challenges to the validity of a proof of claim without competent supporting evidence and legal authority does not rebut the prima facie presumption of Rule 3001. Based upon the evidence presented at trial, the Court finds that the Plaintiffs failed to overcome the prima facie case regarding the Defendant's Claim and thus the Claim is allowed.

III.    *Standing to file a Proof of Claim*

    "The Bankruptcy Code and Rule 17 of the Federal Rules of Procedure each have liberal standing provisions, designed to allow a party to appear as long as it has a direct stake in the litigation under the particular circumstances."[96] Pursuant to Rule 3001(b), a proof of claim may be executed by either "the creditor or the creditor's authorized agent."[97] The Bankruptcy Code defines the term "creditor" to include "an entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor."[98] A claim is either a "right to payment" or a "right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured."[99]   As explained by the Supreme Court, "Congress intended by this language to adopt the broadest available definition

---

[95]        Nationstar Proof of Claim, Defendant's Ex. 39.
[96]        *Greer v. O'Dell (In re O'Dell)*, 305 F.3d 1297, 1302-1303 (11th Cir. 2002) ("mortgage servicers are real parties in interest").
[97]        FED. R. BANKR. P. 3001(b).
[98]        11 U.S.C. § 101(10)(A).
[99]        11 U.S.C. § 101(5)(A)-(B):

26

of 'claim.'"[100] The "'right to payment' [means] nothing more nor less than an enforceable obligation . . . ."[101]

Given the Bankruptcy Code's liberal standing provisions, courts have held that "[a] servicer of a mortgage is clearly a creditor and has standing to file a proof of claim against a debtor pursuant to its duties as a servicer."[102] As explained by the Eleventh Circuit "a loan servicer is a 'real party in interest' with standing to conduct, through licensed counsel, the legal affairs of the investor relating to the debt that it services."[103] "The real party in interest principle is a means to identify the person who possesses the rights sought to be enforced. . . ."[104] With respect to a mortgage proof of claim, the real party in interest "is the party entitled to enforce the note and its accompanying mortgage" under applicable non-bankruptcy law.[105]

"State law usually determines whether a person" has an enforceable obligation.[106] In this case, the applicable non-bankruptcy law is Article 3 of Alabama's Uniform Commercial Code, which provides rules governing the "person entitled to enforce" a negotiable instrument.[107] "A mortgage note is a negotiable instrument subject to the provisions of Alabama's Uniform Commercial Code . . . ."[108]

Under ALA. CODE § 7-3-301, "a person entitled to enforce an instrument" is defined as follows:

(i) the holder of the instrument, (ii) a nonholder in possession of the instrument who

---

[100]     *Johnson v. Home State Bank*, 501 U.S. 78, 83 (1991).
[101]     *Id.* (*quoting Pennsylvania Dept. of Public Welfare v. Davenport,* 495 U.S. 552, 559 (1985)).
[102]     *In re Conde-Dedonato*, 391 B.R. 247, 250 (Bankr. E.D.N.Y. 2008).
[103]     *In re O'Dell*, 305 F.3d at 1303 (citing cases in which courts have held that "mortgage servicers are real parties in interest).
[104]     *Id.*
[105]     *In re Smoak*, 461 B.R 510, 517 (Bankr. S.D. Ohio 2011); *In re Benyamin,* 596 B.R. 789, 794 (Bankr. S.D.N.Y. 2019)("A mortgage servicer has standing to file a proof of claim against a debtor pursuant to its duties as a servicer.").
[106]     *Midland Funding, LLC v. Johnson (In re Johnson),* 137 S. Ct. 1407, 1411 (2017).
[107]     *See* ALA. CODE § 7-3-102 (limiting the scope of Article 3 to negotiable instruments).
[108]     *Graveling v. Castle Mortg. Co.*, 631 Fed. Appx. 690, 696 (11th Cir. 2015).

27

has the rights of a holder, or (iii) a person not in possession of the instrument who is entitled to enforce the instrument pursuant to Section 7-3-309 or 7-3-418(d). *A person may be a person entitled to enforce the instrument even though the person is not the owner of the instrument or is in wrongful possession of the instrument.*[109]

Accordingly, as recently explained by the Eleventh Circuit, in Alabama "a note can be enforced by (1) the holder of the instrument, (2) a nonholder who is in possession of the instrument and who has the rights of a holder, or (3) a person not in possession of the instrument who is entitled to enforce it."[110] Under ALA. CODE § 7-1-201(b)(21), the term "holder" is defined to include "[t]he person in possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession."[111]

As further explained by the Eleventh Circuit, in Alabama "[a] negotiable instrument that is endorsed in blank is payable to the bearer and may be negotiated by transfer of possession alone."[112] "A negotiation requires [either] a transfer of possession and an indorsement by the holder if the instrument is payable to an identified person *or transfer by possession only if the instrument is payable to bearer*."[113] "Moreover, '[a] person may be a person entitled to enforce the instrument even though the person is not the owner of the instrument or is in wrongful possession of the instrument.'"[114] Thus, in Alabama "[p]ossession of note payable to order and indorsed in blank is *prima facie* evidence of ownership. . . ."[115]

In the case of *Thomas v. Wells Fargo Bank, N.A.*, the mortgagors claimed that Wells Fargo, as trustee, did not own their note and mortgage at the time the trustee instituted foreclosure

---

[109] ALA. CODE § 7-3-301[emphasis added].
[110] *Federal Home Loan Mortg. Corp. v. Wilson,* 702 Fed. Appx. 827, 829 (11th Cir. 2017).
[111] ALA. CODE § 7-1-201(b)(21).
[112] *Graveling v. Castle Mortg. Co*., 631 Fed. Appx. 690 (11th Cir. 2015)(citing ALA. CODE § 7-3-205(b)); *See also Thomas v. Wells Fargo Bank, N.A*., 116 So.3d 226, 233 (Ala. Civ. App. 2012)(a negotiable instrument that has been endorsed in blank "'becomes payable to 'bearer' and may be negotiated by transfer of possession alone. . . '").
[113] *Smalls v. Wells Fargo Bank, N.A.,* 180 So.3d 910, 916 (Ala. Civ. App. 2015).
[114] *Federal Home Loan Mortg. Corp. v. Wilson,* 702 Fed. Appx. 827, 829 (11th Cir. 2017).
[115] *Graveling v. Castle Mortg. Co*., 631 Fed. Appx. 690 at 696 (quoting *Thomas v. Wells Fargo Bank, N.A.*, 116 So.3d 226, 223 (Ala. Civ. App. 2012)).

proceedings and, therefore, lacked standing to foreclose.[116] The Alabama Court of Civil Appeals explained that the trustee was authorized to foreclose, even if the mortgage and note did not contain a complete chain of endorsements or assignments in alleged violation of a pooling and servicing agreement under which the trustee had acquired the note and mortgage, because the trustee had physical possession of the note, endorsed in blank.[117] The fact that the note and mortgage did not contain a complete chain of endorsements or assignments was not a defense to the ejectment action because the trustee was in possession of the note before the trustee initiated foreclosure proceedings. By virtue of its possession of the note, under Alabama law, the trustee was entitled to enforce the note.

Citing the case of *Wisman v. Nationstar Mortg.*, *LLC,* the Plaintiffs argue that no evidence was submitted to prove that Freddie Mac ever purchased their Note, nor that Nationstar had possession of their Note or authority to collect payments through an assignment of the Mortgage on the petition date.[118] In *Wisman,* the state court held that Nationstar failed to establish that it was entitled to enforce a lost note, and therefore, did not present sufficient evidence of its standing to foreclose. The court found in that case that it was unclear from the evidence how the entity that assigned the note and mortgage was associated with its supposed predecessors in interest, and there was no showing that the supposed owner of the note was entitled to enforce the note when the note was lost. In the case before this Court, however, Nationstar does not seek to reestablish a lost note. Nationstar produced the original Note, endorsed in blank, at trial. Through the blank endorsement, the Note became bearer paper, and it is clear from the evidence that Nationstar holds the Note. Nationstar's witness Richardson testified based upon his review of the collateral file maintained

---

[116] *Thomas v. Wells Fargo Bank, N.A.*, 116 So.3d 226 (Ala. Civ. App. 2012).
[117] *Id.*
[118] *See Wisman v. Nationstar Mortg., LLC,* 239 So.3d 726 (Fla. 5th DCA 2017).

by Nationstar in the ordinary course of business that Freddie Mac purchased the Note on April 24, 2007 and that Nationstar has been in either actual or constructive possession of the Note since April of 2013. Richardson had possession of the original Note in the courtroom at trial.

Despite the testimony of Nationstar's representative based upon his knowledge of Nationstar's collateral file that Freddie Mac purchased the Note endorsed in blank in April of 2007 soon after the loan originated, the Plaintiffs challenge Nationstar's standing to file the claim. The challenge is based upon what they consider a lack of evidence regarding Freddie Mac's ownership of the Note because the Note was endorsed in blank and because Nationstar did not offer a loan purchase agreement into evidence.[119] The Plaintiffs fail to understand, however, that ownership and entitlement to enforce a note are separate legal concepts. As explained by the Ninth Circuit Bankruptcy Appellate Panel, the maker of a note "should be indifferent as to who owns or has an interest in the note so long as it does not affect the maker's ability to make payments on the note."[120] The Bankruptcy Appellate Panel reasoned as follows:

> Article 3 . . . deals primarily with payment obligations surrounding a negotiable instrument, and the identification of the proper party to be paid in order to satisfy and discharge the obligations represented by that negotiable instrument. . . . . Article 3 does not necessarily equate the proper person to be paid with the person who owns the negotiable instrument. Nor does it purport to govern completely the manner in which those ownership interests are transferred. For the rules governing those types of property rights, Article 9 provides the substantive law. UCC § 9–109(a)(3) (Article 9 "applies to ... a sale of ... promissory notes").
>
> . . . .
>
> Article 3 provides a comprehensive set of rules governing the obligations of parties on the Note, including how to determine who may enforce those obligations and to

---

[119] In the case of *In re Benyamin*, 596 B.R. 7489 (Bankr. S.D.N.Y. 2019), a bankruptcy court recently expunged a claim filed by a loan servicer, finding that the servicer failed to prove that it was in actual or constructive possession of the note on the petition date where the undated custodial agreement upon which the loan servicer relied to prove possession was not admitted into evidence and did not specifically refer to the debtor's note. Moreover, the loan servicer failed to call a witness to substantiate or verify possession. Here, Nationstar presented evidence that it has been in either constructive or actual possession of the Plaintiffs' Note since April of 2013.

[120] *Veal v. Am. Home Mortg. Servicing, Inc. (In re Veal)*, 450 B.R. 897, 912 (B.A.P. 9th Cir. 2011).

30

whom those obligations are owed. *See* UCC § 3–102; Miller & Harrell, *supra,* § 1.02. Contrary to popular opinion, these rules do not absolutely require physical possession of a negotiable instrument in order to enforce its terms. Rather, Article 3 states that the ability to enforce a particular note—a concept central to our standing inquiry—is held by the "person entitled to enforce" the note. UCC § 3–301.

. . . .

[T]he rules that determine who is entitled to enforce a note are concerned primarily with the maker of the note. They are designed to provide for the maker a relatively simple way of determining to whom the obligation is owed and, thus, whom the maker must pay in order to avoid defaulting on the obligation. UCC § 3–602(a), (c). By contrast, the rules concerning transfer of ownership and other interests in a note identify who, among competing claimants, is entitled to the note's economic value (that is, the value of the maker's promise to pay).[121]

As further explained in the case of *Merritt v. PNC Bank*, evidence that some other entity may be the owner or investor in a note is not relevant to the determination of standing because the entity with the right to enforce the note may well not be the entity entitled to receive the economic benefits from payments received.[122] In *Merritt*, a Chapter 13 debtor objected to a proof of claim filed by a loan servicer based upon the servicer's alleged lack of standing because the evidence revealed that Freddie Mac was the owner/holder of the loan. On appeal, the district court explained that whether or not Freddie Mac owned the note was irrelevant to the servicer's standing to file a proof of claim because the loan servicer held the note.[123]  Rather than focusing on Freddie Mac's status as the owner, the district court explained that the relevant inquiry was "whether PNC is the servicer and/or holder of the Note, which give it standing to file the Proof of Claim."[124]

In the case before this Court, the evidence establishes that Southbank originated the Note in 2007 and that the Note was subsequently endorsed three times with the final endorsement in

---

[121]     *Id.*
[122]     *Merritt v. PNC Bank (In Re Merritt)*, 555 B.R. 471 (E.D. PA. 2016), *aff'd*, 702 Fed. Appx. 90 (3rd Cir. 2017).
[123]     *Id.*
[124]     *Id.*

31

blank. A representative of Nationstar credibly testified that Nationstar has been in possession of the Note, either directly or through the document custodian since, April of 2013. Nationstar, being in physical possession of the Note with an affixed endorsement in blank, is the holder of a negotiable instrument under the Alabama Uniform Commercial Code. Through the blank endorsement, the Note became bearer paper under Alabama law. In addition, Nationstar can enforce the Note because it acts as the agent for Freddie Mac pursuant to the Servicing Transfer Agreement dated January 6, 2013, transferring, with Freddie Mac's consent, Bank of America's servicing rights to Nationstar.[125] Accordingly, the Court finds that Nationstar had standing to file a proof of claim and is the real party in interest in this case as the holder of the original Note endorsed in blank.

In addition, in response to the Plaintiffs' allegation that Nationstar does not have standing because it did not have a recorded assignment of the Mortgage prior to the petition date, the Court finds that Alabama follows the common law rule that the mortgage follows the note.[126] Any concerns that the Plaintiffs expressed that their mortgage payments are going to the wrong entity because Nationstar failed to prove to their satisfaction that Freddie Mac owns the Note, can be ameliorated since Nationstar is clearly the entity with the right to enforce the Note, as the holder of the Note endorsed in blank, under the Alabama Uniform Commercial Code. "If a maker makes a payment to a 'person entitled to enforce [a note],' the obligation is satisfied on a dollar for dollar basis, and the maker never has to pay that amount again."[127] Thus, the Plaintiffs have little risk of being required to pay twice to retire their mortgage.

---

[125] Servicing Transfer Agreement, Defendant's Ex. 24.
[126] *See Perry v. Fed. Nat'l Mortg. Ass'n*, 100 So.3d 1090, 1099 (Ala. Civ. App. 2012)(explaining that the fact that a note and mortgage were initially separated did not prevent the assignee of a mortgage from having an enforceable lien); *See also* Ala. Code § 7-9A-203(g)(codifying the common law rule "that a transfer of an obligation secured by a security interest or other lien on personal or real property also transfers the security interest or lien.").
[127] *Veal v. Am. Home Mortg. Servicing, Inc. (In re Veal)*, 450 B.R. 897, 910 (B.A.P. 9th Cir. 2011).

32

IV.  ***Plaintiffs failed to Establish that Nationstar's Proof of Claim is Materially Defective***

The Plaintiffs argue that Nationstar's Claim and Amended Claim are materially defective because Nationstar: (i) failed to indicate that it was acting as an agent for Freddie Mac when it filed the Claim or to identify Freddie Mac as the real party in interest; (ii) failed to disclose the identity of the Note Holder; and (iii) overstated the amount of principal, interest, and prepetition arrearage.   The Plaintiffs contend that Nationstar intentionally filed a materially defective proof of claim, thereby committing fraud under Alabama law.

In *Merritt v. PNC Bank,* the debtor similarly argued that its loan servicer committed fraud by failing to disclose in its proof of claim that Freddie Mac owned the debtor's loan.[128]   The district court explained that the loan servicer did not commit fraud when, in an apparent effort to comply with redaction protocol, it redacted Freddie Mac's name as the owner of the mortgage loan from the proof of claim.[129]   In this case, on Part 9 of the Proof of Claim, Nationstar clearly disclosed its identity as the servicer of the Plaintiffs' loan and that Nationstar, either directly or through an agent, had possession of the Note. Nationstar further clearly identified Freddie Mac as the owner of the Note in correspondence with the Plaintiffs and indicated on multiple occasions that Nationstar was acting in its capacity as the servicer of the Plaintiffs' loan. Nationstar explained by letter dated March 1, 2017, that its "records indicate[d] that Freddie Mac, is the current owner of the loan" and that Nationstar was acting as "servicer of the loan."[130]   By letter dated July 6, 2017, Nationstar "verified [that] Freddie Mac is the investor. *The account originated with Freddie*

---

[128]   *Merritt v. PNC Bank (In re Merritt)*, 555 B.R. 471 (E.D. PA. 2016), *aff'd,* 702 Fed. Appx. 90 (3rd Cir. 2017).
[129]   *Id.* at 477-478.
[130]   Letter dated March 1, 2017, Plaintiffs' Ex. 6G.

*Mac as the investor and has not had any other entity as the owner.*"[131]  Accordingly, based upon the testimony and evidence presented, the Court does not find that Nationstar attempted to hide or deceive either the Plaintiffs nor the Court regarding Freddie Mac's ownership of the Note, nor with respect to Nationstar's status as mortgage loan servicer.

Further, as explained by the Eleventh Circuit "a loan servicer is a 'real party in interest' with standing to conduct, through licensed counsel, the legal affairs of the investor relating to the debt that it services."[132]  "The real party in interest principle is a means to identify the person who possesses the rights sought to be enforced. . . ."[133]  Accordingly, the Plaintiffs' argument that Nationstar's proof of claim is materially defective because Nationstar is not the real party in interest must be rejected under Eleventh Circuit case law.

In addition, the Plaintiffs failed to offer any evidence in support of their arguments that Nationstar overstated the amount of principal, interest, or prepetition arrearage on the proof of claim. Nationstar's witness, Richardson, credibly testified regarding each of the calculations included in the proof of claim.   The Plaintiffs did not offer any credible evidence to the contrary.

### V.    *Mortgage Assignment*

It is undisputed that Southbank recorded the Plaintiffs' Mortgage on April 6, 2007 in Madison County, Alabama. It is further undisputed that on the petition date Nationstar did not have a recorded assignment of the Mortgage.[134]   On April 1, 2016, MERS executed a Corporate

---

[131]    Letter dated July 6, 2017, Plaintiffs' Ex. 1G [emphasis added].
[132]    *Greer v. O'Dell (In re O'Dell)*, 305 F.3d 1297, 1303 (11th Cir. 2002)(citing cases in which courts have held that "mortgage servicers are real parties in interest").
[133]    *Id.*
[134]    Joint Stipulation of Facts, ECF No. 150, ¶ 40.

Assignment of Mortgage, as nominee for Southbank, assigning the Mortgage to Nationstar. On April 14, 2016, Nationstar recorded the Corporate Assignment of Mortgage in Madison County, Alabama, the county in which the Property is located.

A post-petition transfer of a recorded mortgage does not violate the stay or constitute an avoidable transfer because a mortgage assignment is not a transfer of property of the estate.[135] "The mortgage and note are assets of the creditor mortgagee, not the Debtor."[136] Thus, a mortgage assignment "merely transfers the claim from one entity to another."[137] Accordingly, the Court finds that the Corporate Assignment of Mortgage, executed by MERS, as nominee for Southbank which Nationstar recorded on April 14, 2016 in Madison County, Alabama, was not a transfer of property of the estate nor an act to collect a debt in violation of the automatic stay.

Further, to the extent the Plaintiffs argue that their Mortgage is a nullity because the Note and Mortgage may have been separated, Alabama courts have rejected such arguments as explained by the Eleventh Circuit in the case of *Watkins v. Regions Mortg., Inc.*, stating as follows:

> To the extent Watkins intended to argue the Note and Mortgage were separated, that argument has been rejected by Alabama courts. *See Coleman v. BAC Servicing,* 104 So.3d 195, 205 (Ala.Civ.App.2012) (quoting the Restatement (Third) of Property regarding mortgages, which explains that "[t]he note is the cow and the mortgage the tail. The cow can survive without a tail, but the tail cannot survive without the cow"). Watkins' contentions regarding the endorsement of the Note in blank are meritless because, as the Note was endorsed in blank, Regions is properly considered the holder of the Note and of the power of sale in the Note by virtue of possession of the Note. *See* Ala.Code §§ 7–3–109(a), (c),–205(b); *Thomas v. Wells Fargo Bank, N.A.,* 116 So.3d 226, 233 (Ala.Civ.App.2012) ("Possession of a note payable to order and indorsed in blank is prima facie evidence of ownership."). Watkins' argument the Assignment needed to be recorded is not supported by Alabama law, which only renders an unrecorded assignment of a mortgage conveyance void as to a purchaser, mortgagee, or judgment creditor, and Watkins is not any of those persons. *See* Ala.Code 35–4–90.[138]

---

[135]  *In re Samuels*, 415 B.R. 8 (Bankr. D. Mass. 2009).
[136]  *Id.* at 22.
[137]  *Id.*
[138]  *Watkins v. Regions Mortg.*, Inc., 555 Fed. Appx. 922, 926 (11th Cir. 2014)(citing *Coleman v. BAC Servicing,* 104 So.3d 195, 205 (Ala. Civ. App. 2012)); *Perry v. Fed. Nat'l Mortg. Ass'n,* 100 So.3d 1090, (Ala. Civ.

Likewise, the Plaintiffs in this case are not purchasers, mortgagees, or judgment creditors. As between the Plaintiffs and Nationstar, Nationstar is considered the holder of the Note and of the power of sale in the Note by virtue of possession under Alabama law. There was no credible evidence presented at trial by the Plaintiffs to the contrary. Accordingly, the Court finds that the Plaintiffs failed to establish that their Mortgage is a nullity because the Note and Mortgage may have been separated.

## VI.     *The Plaintiffs Failed to Establish Violations of the FDCPA or to Establish Claims for Fraud, Deceit, Suppression and Misrepresentation of Material Facts*

The Plaintiffs assert numerous claims against Nationstar under the FDCPA and Alabama law, arguing generally that Nationstar made false and misleading representations regarding: (i) its ability to foreclose the Mortgage secured by the Plaintiffs' home before it had a recorded assignment of the Mortgage; (ii) its standing to enforce the Note; and (iii) its status as loan servicer in its proof of claim. The Plaintiffs also allege that Nationstar committed fraud and violated the FDCPA by misrepresenting the status of its security interest in their Property prior to offering and entering into the Loan Modification Agreement and by miscalculating or overstating the principal balance, interest and escrow shortage in the Claim and the Loan Modification Agreement.

"The FDCPA prohibits a 'debt collector' from using a 'false, deceptive, or misleading representation or means in connection with the collection of any debt,' including 'threat[ening] to take any action that cannot legally be taken.'"[139] For the reasons previously stated herein and further set forth below, the Court finds that the Plaintiffs failed to prove that Nationstar violated

---

App. 2012)(rejecting argument that plaintiff did not have an enforceable lien because the note and mortgage were separated).
[139]     *Cilien v. U.S. Nat'l Assoc.*, 687 Fed. Appx. 789, 792 (11th Cir. 2017).

the FDCPA by threatening to take any action that it was not legally entitled to take or otherwise made any false, deceptive or misleading representations in connection with the collection of any debt.

In the case of *Cilien v. U.S. Nat'l Assoc. (Cilien)*, a debtor challenged the assignment of her mortgage arguing, in part, that the mortgage assignee violated the FDCPA by seeking relief from the stay to foreclose.[140] The Eleventh Circuit held that the debtor could not establish a claim under the FDCPA because the assignee did not threaten to take any action that it was not legally entitled to take. The Eleventh Circuit explained, in part, that the debtor lacked standing to challenge the validity of the assignment of her mortgage loan and, thus, could not assert that the assignee was not the lawful holder of the loan. As the assignee of the security deed, the assignee had authority to foreclose and made no threat to take any action that it was not legally authorized to take.[141]

As discussed above, Nationstar's witness Richardson credibly testified that Nationstar has serviced the Plaintiffs' loan on behalf of Freddie Mac since 2013, and that Nationstar has been in possession of the Note, either directly or through a document custodian, since 2013. In Alabama, "[a] holder of a note secured by a mortgage is entitled to enforce the terms of the note."[142] Further, "any person or entity who, before initiating foreclosure proceedings becomes a *holder* of a promissory note secured by a mortgage and thereby is entitled to payment of the mortgage debt may validly foreclose upon a borrower's default."[143] Thus, under Alabama law, "[t]he holder of the promissory note, endorsed in blank, is entitled to conduct a foreclosure sale . . . ."[144]

---

[140]     *Id.*
[141]     *Id.* at 793.
[142]     *Sturdivant v. BAC Home Loan Servicing, LP*, 159 So.3d 47, 55 (Ala. Civ. App. 2013)(citing *Perry v. Federal Nat'l Mortg. Ass'n*, 100 So. 3d 1091, 1094 (Ala. Civ. App. 2012)).
[143]     *Id.*
[144]     *Federal Home Loan Mortg. Corp. v. Wilson*, 2015 WL 5693600 *5 (N.D. Ala. 2015), *aff'd*, 702 Fed. Appx.

Accordingly, the Court finds that Nationstar, as the holder of the Plaintiffs' Note, endorsed in blank, made no threat to take any action that it was not legally authorized to take. Thus, the Plaintiffs failed to establish that Nationstar made any false, deceptive or misleading representations in connection with the collection of any debt in violation of the FDCPA.

The Plaintiffs also failed to establish that Nationstar committed fraud or misrepresented its ability to foreclose or made a false representation in connection with the Loan Modification Agreement. "To state a claim of fraud under Alabama law, a plaintiff must prove that: (1) the defendant made a false representation; (2) this representation was of a material fact; (3) the plaintiff reasonably relied on the representation; and (4) the plaintiff suffered damage as a proximate consequence of the reliance."[145] "In addition, a plaintiff pleading a fraud claim in federal court must "state with particularity the circumstances constituting fraud." Fed.R.Civ.P. 9(b). A complaint alleging fraud must set forth: (1) precisely what statements were made; (2) the time and place of each statement and the person responsible for making the statement; (3) the content of each statement and how those statements misled the plaintiff; and (4) what the defendants obtained as a consequence of the fraud."[146]

The Court finds that the Plaintiffs failed to establish by credible evidence that Nationstar made a false representation of a material fact upon which the Plaintiffs reasonably relied with respect to either Nationstar's right to foreclose or with respect to the Loan Modification Agreement. The Plaintiffs presented only self-serving assertions and arguments that Nationstar made false representations regarding Nationstar's right to enforce their Note, its ability to foreclose, and with respect to the Loan Modification Agreement, all unsupported by credible

---

827 (11th Cir. 2017).

[145]    *Graveling v. Castle Mortg. Co.*, 631 Fed. Appx. 690, 694 (11th Cir. 2015)(citing *Drummond Co. v. Walter Indus.*, 962 So.2d 753, 788 (Ala.2006)).

[146]    *Id.* (citing *Ziemba v. Cascade Intern., Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001)).

38

evidence.

Finally, the Plaintiffs failed to establish how they were damaged as a proximate consequence of their reliance upon any alleged false representations allegedly made by Nationstar. The Plaintiffs seek damages against Nationstar for allegedly misleading them into believing that Nationstar had the ability to foreclose, thereby allegedly causing them to seek bankruptcy relief and to enter into the Loan Modification Agreement. Accordingly, the Plaintiffs' purported damages include all Chapter 13 plan payments made to all creditors as well as related expenses incurred during the pendency of their case, and damages based upon the Loan Modification Agreement. The Plaintiffs also attribute their inability to pursue graduate studies, Mr. Nelson's inability to write novels, and Mrs. Nelson's failure to obtain a promotion to the alleged fraud by Nationstar. The Plaintiffs allege total monetary damages against Nationstar in the amount of $535,246, calculated as follows:

- payments to the Chapter 13 Trustee for a period of five years - $17,460;

- bankruptcy attorney's fees - $3,000;

- prepetition mortgage payments collected by Nationstar - $39,732;

- twenty years of principal with interest based upon the loan modification - $295,000;

- postpetition payments to Nationstar prior to the loan modification - $5,205;

- damages resulting from the loan modification - $4,606;

- Mrs. Nelson's lost eligibility for student loan forgiveness program - $62,000;

- lost job opportunity/promotion - $16,000;

- loss of three years freelance writing - $90,000;

39

- expenses related to attending hearings - $2,243.[147]

The Plaintiffs failed to submit any evidence at trial, beyond their own self-serving and less than credible assertions, regarding how any actions or inactions by Nationstar, lead to or are the cause of Mrs. Nelson's lost job opportunity and Mr. Nelson's inability to earn income as a freelance writer. In addition, while the Plaintiffs' summary of damages includes payments to the Chapter 13 Trustee, the Plaintiffs admitted at trial that the creditors being paid by the Chapter 13 Trustee are their legitimate creditors.[148] There is no credible evidence of damage to the Plaintiffs from paying their legitimate creditors in the Chapter 13 case. Moreover, Mrs. Nelson admitted that the Plaintiffs have paid approximately $10,000 less to Nationstar than originally owed under the Note since the Plaintiffs entered into the Loan Modification Agreement. The Plaintiffs also contend that they filed bankruptcy because Mrs. Nelson was frightened and concerned that they would lose their home after receiving letters from Nationstar regarding their mortgage default. However, none of the letters offered into evidence were foreclosure notices. Despite their mounting credit card debt and the pending lawsuit filed by Discover Bank, the Plaintiffs unpersuasively testified that they were forced to seek bankruptcy relief <u>only</u> because Nationstar fraudulently misled the Plaintiffs to believe that it had the ability to foreclose on the Mortgage.

While it is clear that the Plaintiffs have persistently blamed and continue to blame all of their financial problems upon Nationstar, because the Court finds that the Plaintiffs failed to establish by any credible evidence that Nationstar made a false representation of a material fact

---

[147]     *See* Summary of Damages to Plaintiffs caused by Nationstar, Plaintiffs' Ex. 11G; Calculation of Damages Based on Fraud in Loan Modification and Application of Payments, Plaintiffs' Ex. 12G; Summary of Expenses Incurred, Plaintiffs' Ex. 13G; Letter dated January 6, 2016 regarding loan repayment program, Plaintiffs' Ex. 19G; Email dated January 8, 2016 regarding student loans, Plaintiffs' Ex. 24G; Email dated January 13, 2016 hold on account, Plaintiffs' Ex. 25G; and Summary of Russell Nelson's Earnings from Writing Before Bankruptcy, Plaintiffs' Ex. 27G.
[148]     Printout from Chapter 13 Trustee of payments to creditors, Defendant's Ex. 79.

40

upon which the Plaintiff reasonably relied with respect to either Nationstar's right to foreclose or with respect to the Loan Modification Agreement, the Plaintiffs have thus failed to establish that they have suffered any damages as a proximate consequence of their reliance upon any false representations made by, or actions or inactions of, Nationstar.

## CONCLUSION

For the reasons set forth above, based upon the evidence presented at trial and the applicable law, the Court finds that the Proof of Claim filed by Nationstar is allowed. Nationstar produced the original Note at trial, endorsed in blank. A representative of Nationstar verified that Nationstar has been in possession of the original Note, either directly or through a document custodian since April of 2013. An expert witness confirmed that the Plaintiffs' signatures are affixed to the original Note. Nationstar, being in physical possession of the Note with an affixed endorsement in blank, is the holder of a negotiable instrument under the Alabama Uniform Commercial Code. Through the blank endorsement, the Note became bearer paper under Alabama law. Accordingly, Nationstar had standing to file a proof of claim and is the real party in interest in this case as the holder of the Note endorsed in blank.

Nationstar clearly indicated on its proof of claim that it was acting as the servicer of the Plaintiffs' loan and identified Freddie Mac as the owner of the Note in multiple communications with Plaintiffs. As the entity entitled to enforce the Note, Nationstar did not falsely represent that it had the ability to foreclose the Mortgage secured by the Plaintiffs' home, did not fraudulently suppress material facts concerning its standing to enforce the Note, nor did it cause the Plaintiffs to file for bankruptcy or enter into the Loan Modification Agreement. Further, the Plaintiffs presented no evidence at trial that the money that the Plaintiffs borrowed from Southbank in 2007

41

has been paid off or satisfied. The Plaintiffs presented no evidence that any entity other than Nationstar has asserted a right to payment of the Note. It is clear from the evidence presented that if the Plaintiffs wish to retain their residence, they must pay and continue to pay the Note, or the Mortgage may be foreclosed by the entity entitled to enforce the Note, Nationstar. Based upon the forgoing, Nationstar's Claim, #17, is allowed as amended.

The Court will enter a separate Judgment in conformity with this Memorandum Opinion.

Dated this the 31st day of July, 2019.

/s/ Clifton R. Jessup, Jr.
Clifton R. Jessup, Jr.
United States Bankruptcy Judge

Case 18-80037-CRJ    Doc 168    Filed 07/31/19    Entered 07/31/19 11:58:59    Desc Main
Document    Page 42 of 42